## HOCHSCHILD, KOHN & CO., INC., *v.* CANOLES

[No. 167, October Term, 1948.]

278

*Decided June 9, 1949.*

The cause was argued before MARBURY, C. J., DELA-
PLAINE, COLLINS, GRASON and HENDERSON, JJ.

*Clater W. Smith* and *Roszel C. Thomsen* with whom were *Clark, Thomsen & Smith* on the brief, for appellant.

*Charles G. Page,* with whom were *White & Page* on the brief, for appellee.

MARBURY, C. J., delivered the opinion of the Court.

The only question presented by this appeal is whether there was any evidence legally sufficient to prove negligence on the part of the defendant, its servants, or employees. The question was raised at the conclusion of the entire case by a motion for a directed verdict and by a request for instructions and, after the verdict, by a motion for a judgment *n. o. v.* These were all overruled. The jury gave a verdict in favor of the plaintiff for $29,000. The defendant appealed.

The facts shown by the plaintiff are that on October 9, 1947, in the early afternoon, the plaintiff had parked his automobile in front of number 3813 Kimble Road, and was preparing to deliver some eggs to that and other addresses in the neighborhood. His car was parked on the east side of the street facing north, and he was in it, kneeling on the front seat and getting eggs out of the back. Kimble Road, which is a public highway of the City of Baltimore, at this point is a hill with the crest about a block to the north of number 3813, and the bottom some distance to the south. It is quite a steep incline. The oil tank truck of the defendant, in charge of one of its employees, was in the act of making a delivery of oil to a customer immediately prior to the happening of the accident. The weight of this oil truck when unloaded was in excess of 24,000 pounds and, when fully loaded in excess of 35,000 pounds. The oil truck was seen running down the hill with no one in the driver's seat, but with the employee in charge of it vainly running behind it in an endeavor to catch it. Oil was spouting out of it. It first struck one car on the west side of the street, then went across to the east side, struck the plaintiff's Ford truck, threw the plain-

tiff out of his car on the sidewalk, pushed his own car wheels over him, and pushed his car backward and across the street on the bank of a residence on the other side. The plaintiff was permanently injured.

After establishing these facts, the plaintiff rested upon the theory that the facts recited raised a presumption of negligence on the part of the defendant. *American Express Co. v. Terry*, 126 Md. 254, 94 A. 1026, Ann. Cas. 1917C, 650; *Potomac Edison Co. v. Johnson*, 160 Md. 33, 152 A. 633; *Baltimore American Underwriters of Baltimore American Ins. Co. v. Beckley*, 173 Md. 202, 195 A. 550; *Potts v. Armour & Co.*, 183 Md. 483, 39 A. 2d 552, and *Baltimore Transit Co. v. Worth*, 188 Md. 119, 52 A. 2d 249. The defendant did not raise any question that it was thereby required to produce its evidence, but proceeded to put on its witnesses. The evidence of defendant showed that its employee drove its truck to 3900 Kimble Road at the top of the hill on the other side of the street from the plaintiff's car, and in order to get as close as he could to the intake with which he had to connect, he backed the truck in between two cars. The one in front was, as he stated, about 15 feet from the oil truck. He said that he turned the wheels of the oil truck slightly toward the curb and about five or ten inches from it. He pulled his hand brake as tight as it would go, put the gears in neutral, and left the motor running, which he stated was his habit in making fuel deliveries. He had no helper. He then left the truck, went to the back of the house, was there admitted and went into the cellar to see how much oil the house tank would take. He came back to the truck, set the gauge on the meter, took out the hose, pulled it to the rear of the house and made the connection. He then came back to the truck, got in the cab and engaged the oil pump, so as to pump the oil. This pump was operated by the same engine which ran the car. The driver stated that he left the engine running because it took some time to start it again. When the oil started to flow, he got out of the cab, and went back

to the rear of the house with a wrench to tighten up the connection there, as he had previously only made it hand tight. He was tightening up this connection, with his back turned to the truck, when the hose started to rub his leg. He turned around and the truck was gone, and the hose was being pulled out. He tried to catch the truck, but could not catch it until after it had hit the two cars and stopped. He stated that the distance between the oil intake at the house and the truck was about 95 or 100 feet.

The defendant then proceeded to show that several days before the accident there had been some trouble with the foot brakes on this truck, and it had been taken to an independent mechanic who had apparently fixed them. On the day before the accident the driver had the truck out, noticed that he was having trouble with his foot brakes and that they were smoking. He stopped where he was, and called the same mechanic, who came and loosened both the hand brake and foot brake. The mechanic said the chief trouble was with the hand brake, which was, of course, the one which the driver relied on to hold the car when he was pumping the oil. The mechanic then followed the truck down the street to see if everything was all right, and, apparently, so far as either he or the driver could find out, the brakes were then all right. The mechanic testified that what caused the accident in his opinion, was not any of the trouble which he had corrected, but was something entirely different. Immediately after the accident he brought the truck into his shop, applied the emergency brake, and found that it flew off. He examined it after that, and found that the pawl and the ratchet had become disengaged. He said that when the brake had been used for some time it did not pull back straight, but went to one side. The motor running and the operation of the pump created quite a bit of vibration all over the truck. It was his explanation that if the ratchet and pawl were engaged on the edge, this vibration would be the thing that would cause them to come apart and release the

brake. The condition of the ratchet and pawl, however, was not investigated by him when he fixed the brake, because that was not the trouble with it. The driver also testified that nothing had happened before to bring his attention to this particular defect.

On this state of the evidence it is contended that the owner had done everything reasonable required of it to see that the brakes were in a safe mechanical condition, that it was a sudden failure without warning, and that, therefore, defendant was not liable. *Sothoron v. West,* 180 Md. 539, 26 A. 2d 16. Practically all of appellant's brief and a great deal of appellee's brief is concerned with the question, whether in such a situation, the Court can rule as a matter of law that the defendant is not guilty of negligence, or to put it in another form, can instruct the jury to find a verdict for the defendant. The appellee's contention is that such evidence merely presents a question for the jury. There are a number of cases which discuss this question, including *American Express Co. v. Terry, supra; Chesapeake Iron Works of Baltimore City v. Hochschild, Kohn & Co.,* 119 Md. 303, 86 A. 345; *Heim v. Roberts,* 135 Md. 600, 109 A. 329, and *Potomac Edison Co. v. Johnson, supra.* In the last named case it is stated that there are cases from quite a number of other states which hold that a demurrer prayer should be granted after the defendant exculpates itself from the inference of negligence by uncontradicted testimony. But this Court did not follow that ruling. The appellant cites in support of that rule, *Combustion Engineering Co. v. Hunsberger,* 171 Md. 16, 187 A. 825, and *Hilton Quarries v. Hall,* 161 Md. 518, 158 A. 19, and *Lever Bros. Co. v. Baltimore & O. R. Co.,* 4 Cir., 164 F. 2d 738. The Maryland cases were discussed at some length in an article on *res ipsa loquitur* by Mr. Roszel C. Thomsen of the Baltimore Bar, in the Maryland Law Review, Volume 3, beginning at page 285. In that article he exposes a case of *res ipsa loquitur* where there is a showing by defendant, by clear and satisfactory evidence, that the defendant was not

negligent. In answer to the question whether the Court should in such a case direct a verdict for the defendant, he states: "There are statements in the decisions of the Maryland Court of Appeals which would indicate that this question must be answered in the negative. A careful review of the cases, however, will raise some doubts as to the proper answer."

In the case before us the precise question raised need not be decided because, in at least two other particulars, there is evidence of negligence on the part of the appellant. The Code Article 66½ (1947 Supplement) not only provides by Section 233 (d) that all brakes shall be maintained in good working order, but it also provides by Section 192 "No person driving or in charge of a motor vehicle shall permit it to stand unattended without first stopping the engine, locking the ignition and removing the key, or when standing upon any perceptible grade without effectively setting the brake thereon and turning the front wheels to the curb or side of the highway." The driver of the appellant, who was in charge of the truck, permitted it to stand without stopping the motor, locking the ignition, and removing the key, and while his truck was upon a perceptible grade, he not only did not effectively set the brake, but there is considerable doubt whether his statement, that he turned the front wheels slightly to the curb, showed a sufficient compliance with the statute. The purpose of Section 192 was either to prevent some unauthorized person from starting a car or to prevent the start of a car by gravity. In either case the object was the protection of the public. The result was to be accomplished not only by turning off the motor and locking the ignition and taking the key away, which would make it difficult for anyone except a mechanic to start the car, but also by the provision that the brakes must be set and the wheels turned to the curb, so that if the car, for any reason, should start of its own accord, it would strike the curb and this would operate as a brake or means of preventing any further motion.

The appellant strenuously urges that the car was not unattended, because the driver in charge was back and forth. It would seem that this is answered by the result. He was so far away when the car started, that he could not reach it, and stop it. The truck was certainly, therefore, not attended by anyone who was able to prevent the very thing which the statute was intended to stop. Again it is suggested that the statute was not intended to apply to oil trucks which have to have their motors running in order to pump oil. There is no such exception in the statute, and, as a matter of fact, the statute does not prohibit the motor running, if the car has someone in a position to prevent its moving. It is said that such a rule would require the necessity of a helper on every oil truck, but we are unable to accept this view. And it does not matter, even if that would be the result, because the purpose of the statute is to insure the safety of the public. However, there is no reason why the driver of an oil truck cannot turn his motor off when he stops, and after he has ascertained how much oil he is going to put in the customer's tank, and after he has connected the hose, he can turn on his engine, start pumping and remain by the truck and stop the pump when the requisite amount of oil is shown by the meter to have been delivered.

Appellant also contends that the running of the engine with the car in neutral was not the proximate cause of the accident, but that the proximate cause was the defective brake, without which the accident would not have happened. The short answer to this is that according to the testimony of appellant's own witness, the cause of the accident was the vibration, which shook loose the brake, and permitted the car to start. The brake might have held, and apparently did hold, until the engine was connected with the pump, which increased the vibration. Leaving the car unattended, under those circumstances, was not only a violation of the statute, but was the direct cause of the starting of the truck and of the accident which happened.

On the question of turning the wheels, we think there was also sufficient evidence or inference of negligence to take the case to the jury. While the defendant's driver testified that he turned his wheels to the curb, there is a strong inference that he did not turn them enough to comply with the statute, which intends this to be a method of stopping a car, if the car starts. It is suggested that when the wheels hit the curb, the weight of the truck threw them around, pointing them in the opposite direction, which caused the truck to go out, into, and across the street. If the wheels had been pointed directly to the curb, it is doubtful whether this could have happened, and it is also doubtful whether, in the space of 15 feet, a large oil truck could have turned around so completely as to strike the automobile in front of it on the left rear instead of directly in the back. This presents a question which the plaintiff had a right to have the jury consider.

For reasons stated, we think that the case was properly submitted to the jury, and, therefore, the judgment will be affirmed.

*Judgment affirmed with costs.*