## LUSTBADER ET UX. *v.* TRADERS DELIVERY CO.

[No. 184, October Term, 1948.]

434

*Decided June 28, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Wilson K. Barnes*, with whom were *Carman, Anderson & Barnes* on the brief, for the appellants.

*Robert H. Engle* and *Roszel C. Thomsen* with whom were *Clark, Thomsen and Smith* on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

This case involves the liability *vel non* of the appellee for damage done the appellants by the backing of appellee's truck into appellants' property on Linden Avenue in the City of Baltimore. The case was tried before the court without a jury, and judgment was given for defendant. Plaintiffs appeal.

The essential facts, as stated in appellant's brief, are substantially as follows:

The appellants, who were the Plaintiffs below, have owned the property, 890 Linden Avenue, Baltimore, Maryland, since 1926. This property is on the west side of Linden Avenue at the intersection of Linden Avenue and Biddle Street. The entrance to the property involved in this litigation is across from the northwest corner of the Richmond Market. Linden Avenue, south of Biddle Street, runs directly north and south and intersects Biddle Street, which runs substantially northeast and southwest. The property 890 Linden Avenue is an apartment house containing two stores. One store is on Biddle Street, and the other is on the corner of Linden Avenue and Biddle Street. There are six apartments in the property. The apartments are occupied by color-

ed people. One of the tenants is Charles R. Bowers. He was a chauffeur employed by The Traders Delivery Company, the appellee and defendant below. He had been employed by that Company since 1925. Four to six weeks prior to December 24, 1946 the appellee had employed Joseph Mabin, a colored boy, 17 1/2 years of age, as a helper on the delivery truck driven by Bowers. Mabin had no operator's license to drive a motor vehicle, of which fact Bowers was aware. Mabin was a nephew of Bowers and Bowers had taken Mabin down to the appellee to get him the job. After the damage to the building of the appellants and before the trial, Joseph Mabin was committed to Crownsville State Hospital for a mental disorder.

Bowers and Mabin at about 7:00 o'clock a.m. on Christmas Eve, December 24, 1946, loaded the appellee's Dodge 1 1/2 ton panel, standard gear shift, delivery truck, for deliveries for the appellee. Mabin had eaten his breakfast, but Bowers, the chauffeur, had not. In the course of making deliveries, at about 9:00 a.m. on December 24, 1946 Bowers parked the truck on Linden Avenue at an angle to the 15 foot pavement on the west side of Linden Avenue, almost directly in front of the entrance to the apartments in the property, 890 Linden Avenue. The right hand side of the truck was substantially directly in front of the south up-right supporting the lintel of the doorway, near a fireplug which is located on the west pavement of Linden Avenue. Bowers, the chauffeur, left the keys to the motor of the truck in the truck and left the truck in gear, presumably in reverse. The truck has two doors to the cab and a rear door and two windows. Bowers testified that he locked both doors of the cab. He had a set of keys to the doors of the cab. His helper, Mabin, also had a set of keys to the doors of the cab, and had these keys on December 24, 1946. The truck was not parked parallel to the curb, but on an angle—substantially at right angles—to the curb, directly in front of the entrances to the property. Bowers then went up to his apartment to eat his breakfast. His employer,

the appellee, gave Bowers permission to do this. Mabin went with him but ate no breakfast, he already having eaten his breakfast before this time. Bowers finished his breakfast between 15 and 30 minutes and then both Bowers and Mabin came down from Bowers' apartment to the sidewalk on Linden Avenue to enter the truck and resume making deliveries. Bowers then met a friend and spoke to him. In the meantime Mabin entered the cab of the truck. Bowers instead of entering the truck, left the truck and went in the liquor and tobacco store on the corner of Linden Avenue and Biddle Street. While he was in this store, the truck, with substantial force, backed over the 5 or 6 inch curb of the 15 foot sidewalk and struck the brick wall of the property 890 Linden Avenue. The blow was a substantial one and resulted in an exceedingly dangerous condition to the whole wall, which was in danger of falling into the street. Bowers heard the crash and immediately ran from the liquor store to see what had happened. He found the truck backed into the wall, Mabin standing beside the truck and both doors of the cab of the truck open. The wall was damaged to the extent of $4966.50.

Mabin had been instructed by Bowers not to "fool with the truck at no time, starting or stopping" and he had been made familiar by Bowers with the instructions of the company that no helper was permitted to drive a truck unless he had a license or was given permission by the boss. Mabin's only duties were to deliver packages, under instructions from Bowers. The reason he had keys to the outside door of the truck was so that he could go in to get a package to deliver, when Bowers was delivering at another nearby place. When both were away from the truck, it had to be locked.

Appellants contend that Article 66 1/2, Section 192 of the Code was violated by Bowers, because he left the truck unattended without removing the ignition keys. There was such a violation at first, but under our decisions, such violation must be the proximate cause of the injury. (*Sun Cab Co. v. Faulkner,* 163 Md. 477, 163

A. 194; *Gloyd v. Wills,* 180 Md. 161, 23 A. 2d 665) to permit recovery for its consequences. When Mabin returned to the car, the situation changed and the car was not unattended, if he was a proper attendant. The accident happened after he was there, and the only question which arises in this connection is what the statute requires in the way of attendance. Appellants suggested in oral argument that since Mabin was not a licensed operator, and did not know how to drive the truck, his presence did not satisfy the statute. We are not concerned here with the occupancy of a car by a bulldog or by a baby, either of which might present obvious questions. Here we have a human being of 17, with apparently sufficient intelligence, who would be presumably capable of preventing any ordinary interference by unauthorized persons. The statute does not define "unattended", but a reasonable interpretation is that it means without any one present who is competent to prevent any of the probable dangers to the public. These dangers are different under different circumstances. A car parked on the brow of a hill (as in *Hochschild, Kohn & Co. v. Canoles,* 193 Md. 276, 66 A. 2d. 780) where one danger is that it can start by the force of gravity, requires attendance by one competent to stop it. On the other hand, where a car is not parked on a perceptible grade, the danger to be guarded against is the interposition of some human agency such as a mischievous child or a prospective thief. In such a case, the attendant would not have to be familiar with the mechanism or the operation of an automobile or the brakes. The attendance required in the case before us was obviously of the latter variety, and did not have to be more than that which could be furnished by the helper. The statute does not require a guarantee that a car cannot move or be moved to the damage of the public, but only that the reasonable precaution mentioned be taken. The person in charge of the car complies, so far as not leaving the car unattended, when he leaves with it a person who may be ordinarily capable of coping with the kind of emergencies that may

be expected to arise under the particular circumstances of the case. When the accident happened in this case, the car was not "unattended" within the meaning of the statute, and, therefore, there was no violation.

Appellants also contend that Mabin was the agent of the appellee, and the latter was bound by his action in starting the truck. There is no direct evidence that Mabin started the truck, although there is in the record a statement by him, furnished in response to interrogatories, which reads "I turned the key on and stepped on the starter to start the motor as I wanted to learn how to run it". This statement was not offered in evidence, and it does not appear from Judge Sherbow's opinion that he considered it. He based his conclusion on this point on what was undoubtedly a reasonable inference, saying "While we do not know exactly how the accident occurred, it may well be inferred that the helper started the mechanism of the truck, which backed over the curb into the building. He was not on his way to the next stop; he had no act or deed to perform for the employer and in starting the truck was not in the prosecution of any business of the employer, either impliedly or expressly; he was not acting within the scope of his employment, which was that of a helper and no more. The law is clear that the employer would not be liable if the chauffeur were operating the vehicle on a mission of his own and not within the scope of the employer's business. If there be a departure or deviation on the part of the chauffeur there is no liability. Here the departure is on the part of a helper who had no authority to operate the truck and who undertook to perform an act not within the scope of his employment."

We think this conclusion of the trial court was justified in view of the evidence, and, since there is nothing to show that Mabin was engaged in the business of his employer, and since he was definitely acting outside of the scope of his authority, and in violation of his instructions, we agree with the conclusion of the trial court on

this phase of the case. Mabin had departed from the business of his employer, and was engaged in an operation of his own. He was no longer the agent of the appellee, and the latter is not liable for his action. *Taylor v. Freeman,* 186 Md. 474, 47 A. 2d 500; *State v. Jones,* 186 Md. 270, 46 A. 2d 623, 47 A. 2d 71; *National Trucking & Storage, Inc. v. Durkin,* 183 Md. 584, 39 A. 2d 687; *A. S. Abell Co. v. Sopher,* 179 Md. 687, 22 A. 2d 462. Appellant cites in support of his contention the District of Columbia case of *Adams Express Co. v. Lansburgh & Bro.,* 49 App. D. C. 144, 262 F. 232. In that case a helper left in charge of a truck while the driver went to make some deliveries, attempted to drive the truck to the next stopping place on the route. When he reached this stopping place, he knocked over a lamp post and broke a plate glass window. Justice Robb who delivered the opinion, held that, notwithstanding the helper was forbidden to drive, he was furthering the business of the principal in going to the next stopping place, was acting in the general scope of his employment, and the principal was liable. The distinction between that case, and the one before us is that in the instant case, the helper was not engaged in the employer's business when he presumably started the engine of the truck, but did it for some purpose of his own.

The contention most strongly urged upon us by appellants is that Bowers, the chauffer, was negligent in leaving the keys in the ignition and letting Mabin enter the truck in his, Bower's absence, and that the appellee is bound by the negligence of Bowers in this respect. Bowers was unquestionably in charge of the truck, and was on the route of his deliveries. He left the keys in the motor, which, apart from any statutory requirement, gave an opportunity to Mabin to start the engine. He left the truck in gear, presumably in reverse, as he had backed to the curb. This caused the truck to back as soon as the engine started. Mabin had keys to the truck, and used them to open the door. These keys were in his possession because he had to get in to get the pack-

ages it was his duty to deliver. Mabin had been told by Bowers not to operate the truck. He had never attempted to do so at any time during the four to six weeks before the accident happened when he was working with Bowers. He was Bowers' nephew, a fortuitous circumstance which may have helped him to get his job, but which would not justify Bowers in thinking he was not going to obey his instructions. The contrary might have been more readily inferable. Mabin had done his work acceptably, had no apparent mental troubles which Bowers knew about, and the latter said that so far as he knew Mabin was "as perfect as I am". Under the circumstances there was nothing unusual in letting Mabin go to the truck first, and open the door. Bowers could hardly suppose that Mabin would attempt to start the engine in violation of his specific instructions not "to fool" with it.

Appellants say, however, that the mere fact that the chauffeur left the truck entirely, and entered the store on the corner was negligence, because he thereby removed himself from the possibility of controlling the truck, and gave Mabin an opportunity to cause the accident. It was, they say, his duty to be in charge of the truck at all times, and it was his negligence in this respect that caused the accident. They cite a number of cases to lend color to this contention.

We omit, in the consideration of such cases, those based upon the violation of a statute similar to Article 66 1/2, Section 192. There are decisions which hold that where a statute is violated by leaving a car unattended with the keys in it, the person in charge is responsible for the damage done by a thief or other unauthorized person. *Ross v. Hartman*, 78 U. S. App. D. C. 217, 139 F. 2d 14, 158 A. L. R. 1370; *Bullock v. Dahlstrom*, D. C. Mun. App., 46 A. 2d 370; *Ostergard v. Frisch*, 333 Ill. App. 359, 77 N. E. 2d 537; *Maggiore v. Laundry & Dry Cleaning Service, Inc.*, La. App., 150 So. 394. On the other hand, there is much authority to the contrary, on the ground that the violation of the statute is not the

proximate cause of the injury. *Galbraith v. Levin*, 323 Mass. 255, 81 N. E. 2d 560; *Roberts v. Lundy*, 301 Mich. 726, 4 N. W. 2d 74; *Kennedy v. Hedberg*, 159 Minn. 76, 198 N. W. 302; *Wannebo v. Gates*, Minn., 34 N. W. 2d 695. We have not before us the necessity of choosing between these conflicting decisions, because, at the time the accident occurred, as we have stated, there was no violation of a statute.

Cases relied on by appellant which have not the support of a statute or ordinance are *Hendler Creamery Co. v. Miller*, 153 Md. 264, 138 A. 1; *Englehart v. Farrout & Co.*, [1897] 1 Q. B. 240 (Lord Esher, M. R.), *Ricketts v. Thos. Tilling, Ltd.*, [1915] 1 K. B. 644 and *Grant v. Knepper*, 245 N. Y. 158, 156 N. E. 650 54 A. L. R. 845 (Cardozo, C. J.) In each of these cases an unauthorized and forbidden helper attempted to operate the vehicle of the owner in furtherance of some part of the latter's business, and was allowed, or given the opportunity, to do so by the person in charge. The latter was held negligent, and his negligence imputed to his employer. Thus in the Hendler case decided by this Court, the chauffeur directed the helper to back a truck, thereby injuring the plaintiff. In the Englehart case, (England), the driver of a delivery cart left it attended by a helper, who could not drive, and went to a house to get some oil for the cart lamp. The helper attempted to turn the cart so that time might be saved in making deliveries, and in so doing had the accident. In the Ricketts case, (England,) the driver of an omnibus permitted the conductor to drive and injure the plaintiff. In the *Grant* case, (N. Y.), a driver permitted the salesman of his employer to drive a truck. The owner of the truck was held responsible for damage to a struck car.

There are other cases which present different reasons for holding the person in charge negligent. The Supreme Court of New Jersey, in a runaway case, upheld a judgment for plaintiff where an automobile was parked on a grade with two small mischievous children in the front seat, who were too young to estimate or appreciate the

danger of meddling with its machinery. The car started down the hill backwards, the children, who had played with the machinery of the car, jumped out, but the car continued down the hill, and injured the plaintiff's automobile. The court laid down the general rule that "a person who leaves an automobile in a public street unattended is under a duty to exercise such care in doing so as a person of ordinary prudence would exercise in the circumstances; and failure to exercise such care, whereby the machine by force of gravity, *or by some other cause reasonably to be anticipated or guarded against*, gets under way and inflicts injury, renders such person liable therefor" in an action for damages (emphasis supplied.) *Barbanes v. Brown*, 110 N. J. L. 6, 163 A. 148, 149. In *Maloney v. Kaplan*, 233 N. Y. 426, 135 N. E. 838, 26 A. L. R. 909, the court said that the duty of the driver of a motor vehicle, left unattended in the street, is to be careful to have it so secured that it will not start up except by the intervention of some external cause not to be anticipated or guarded against. The judgment, however, was reversed, because the trial justice did not instruct the jury that if the truck had been left with the switch turned off, the emergency brake set, and the front wheels turned in towards the curb, and if in his absence some boys started the truck, then the owner was not liable. The court said that if these facts had been found, no negligence would be established. In *Barlow v. Verrill*, 88 N. H. 25, 183 A. 857, 104 A. L. R. 1126, the operator of a car belonging to defendant had with him an elderly man who knew nothing about driving an automobile, or how to start or stop one. The car stopped, supposedly because it had run out of gasoline and the operator went to look for some. Some other parties came by and pushed the car to the top of a hill, whereby it started down, gained speed and damaged the plaintiff. There was testimony that, when the car was going down the hill, the motor was running. The elderly occupant testified that he did not turn the ignition key or put the car in gear. The court said that it was within

the province of the jury to find that the automobile was left in gear with the ignition on, and that under such circumstances, the possibility that a car in that condition might be moved or started by an unauthorized person was sufficiently obvious, and the jury could have found that due care requires precaution be taken against the happening of such an occurrence. A judgment was sustained. The Court of Appeals of Louisiana in the case of *Castay v. Katz & Besthoff*, La. App., 148 So. 76, 78, held that where the driver of defendant's truck left it with the engine running, and then saw it moving down the street, and heard the gears shift, that he was not guilty of any negligence because the theft of the truck and negligent injury of plaintiff by the thief was a consequence too remote to be reasonably within the contemplation of the driver. The court, however, said "The situation would be different if the accident had been caused by a child attracted by the running motor * * * for the reason that children—boys particularly—may reasonably be expected to experiment with machinery or other mechanism which can be set in motion." In the late case of *Curtis v. Jacobson*, Me., 1947, 54 A. 2d 520, 525, many cases from other jurisdictions were discussed. In the case before the Maine Court, a taxicab parked on private property in the driveway of a diner, was left idling, while the driver ordered a meal. Within a few minutes, he saw his cab had gone, and, eventually, it was found that it had been in a collision. Whoever drove it away from where it was parked was never apprehended or identified. The contentions were made on the part of the plaintiff that by parking the taxicab unattended with its motor running, the theft was invited, with the reasonably forseeable likelihood that the thief would drive improperly. The defendant said that its driver's action in leaving the taxicab with the motor running was not negligent and was not the proximate cause of the damage. The Court quoted an early Maine case that "There can be no fixed and immutable rule upon the subject that can be applied upon all occasions. Much therefore de-

pends upon the circumstances of each particular case", and set aside the verdict, because no situation existed which would put the driver of the cab on notice of the presence of a thief, and no such act could be foreseen.

In the case of *Seaboyer v. Director General of Railroads*, 244 Mass. 122, 138 N. E. 538, Rugg. C. J., a helper was driving an electric truck. His duties did not include driving. The authorized driver had gone to the office to turn in his money. The helper, in his absence, and without authority, drove the truck out of the way of another truck, and to a parking place, and had an accident. The defendant owner was held not liable on the ground that the helper had overstepped his duty, and was acting outside of the scope of his employment.

Our decisions hold that in a collision caused by an automobile operated by the servant of the owner, there is reasonable presumption that the servant was acting upon the business of his master, and that the burden of overcoming this presumption is upon the master. *Jordon Stabler Co. of Baltimore City v. Tankersly*, 146 Md. 454, 126 A. 65; *Taylor v. Freeman*, 186 Md. 474, 47 A. 2d 500. In the case before us, however, the plaintiffs produced all the facts available and these facts give rise to no such presumption.

It may be a narrow distinction that the person in charge of a vehicle is guilty of negligence chargeable to his employer if he permits or gives opportunity for an unauthorized employee to operate that vehicle for his employer's business, and, on the other hand, that the person in charge is not guilty of such negligence, when he gives an opportunity to such unauthorized employee to operate the automobile for his own purposes. But the distinction is real, and is founded in the law of agency. The chauffeur is the agent of the employer to conduct his business, and anything done for the conduct of that business, by his permission or allowance, binds the employer. On the other hand, his remissness in allowing some unauthorized person (even an unauthorized fellow-employee) to use the employer's vehicle

for purposes outside of the business, is not within his agency, and cannot be charged to his employer. If we consider this case, as some of the quoted decisions do, on the basis whether or not there was any reasonable ground for the chauffeur to suppose that the situation was dangerous, we can find no similarity in it to that of the man who leaves a car on the public street with keys in the ignition, while there are children playing about. The truck in this case was open only to the helper, and there was no reason for the chauffeur to suppose that the helper was going to act as he did. There would, in fact, be less reason to suppose that an apparently trustworthy employee would interfere with the machinery of the car which he had no right to touch, than to suppose that some thief or unauthorized person would take advantage of an opportunity given him. The better reasoned cases hold that, in the absence of a statute, where a thief or child starts a car, such action by the thief or the child is a proximate cause of any accident, and the person lawfully in charge of the car is negligent only if there is a reasonable ground for him to anticipate such a result. In the case before us it does not seem to us that the chauffeur could reasonably have anticipated what actually happened. We think he was not negligent.

*Judgment affirmed with costs.*