STEPHEN EDWIN COLLINS ET AL. *v.* LARRY
M. LUPER ET AL.

[No. 456, September Term, 1970.]

*Decided May 28, 1971.*

110

The cause was argued before MURPHY, C. J., and MOY-
LAN and POWERS, JJ.

*M. Michael Cramer,* with whom were *Levitan, Cramer
& Weinstein* on the brief, for appellants.

*Charles W. Bell,* with whom were *John T. Bell, Frank
S. Cornelius* and *Bell & Bell* on the brief, for appellees.

MURPHY, C. J., delivered the opinion of the Court.

On October 29, 1966, appellee Luper was a passenger
in a car driven by appellant Stephen Collins and owned
by his father, appellant Edwin Collins. Earlier that day,
Stephen had met his friends, including Luper, at a local
drugstore; the boys, six in number, left in the Collins'
car for the countryside to drink beer at approximately
7:45 p.m. Luper and Stephen were then eighteen years
old. One of the boys, Edward Roche, was fifteen. Each
of the boys drank two or three cans of beer. Thereafter,
they returned to Rockville around 11:00 p.m. Stephen
parked the car on the street so that he and two of his
friends could urinate in some nearby bushes. He left the
ignition keys in the car. Luper, Edward Roche, and John

Sorrells remained in the car. Appellant Edwin Collins happened to be driving by at this time and stopped his truck to speak with his son. As the two were conversing outside the car, Roche suddenly drove off in the Collins' car at a high rate of speed. He struck a utility pole a short distance away and Luper was injured.

Luper sued both Collinses and Roche. As to the former, he claimed that Stephen had a duty not to leave the vehicle unattended, without stopping the engine, locking the ignition, and removing the key, or without leaving the vehicle in charge of a competent person and in such a condition as to make it possible for others to readily operate it. Luper alleged that Stephen negligently breached this duty and, as a result, Roche, either as Stephen's agent or otherwise, thereafter operated the vehicle in a negligent manner causing Luper's injuries. Luper claimed in separate counts of his declaration that Stephen's negligence was imputed to the elder Collins since he had assumed liability for his minor son's negligence by signing his application for a driver's license.

At the trial before a jury in the Circuit Court for Montgomery County the evidence showed without conflict that Stephen left the radio and heater on and the keys in the ignition when he left the car to urinate. The evidence was conflicting as to whether he left the engine running. Stephen testified that he had not; the elder Collins's testimony supported his son's version. Roche's testimony, introduced by deposition, was that Stephen left the engine running; Luper's testimony tended to support Roche's version.

Luper testified that only twelve cans of beer had been consumed the entire night and that no one was drunk.[1] Stephen admitted knowing that Roche had had a "couple" beers, and that he was only fifteen years old. The evidence showed that when Stephen left the car to urinate,

---

1. According to Luper, there were six or seven cans of beer in the car when the boys initially left for the countryside; that two cases of beer were thereafter purchased; and that at the time of the accident, one of the cases had not been opened and part of the other case remained intact.

Roche was sitting in the front seat, next to the driver's seat, with Luper next to Roche in the passenger seat, and Sorrells in the back seat. Both Luper and Roche testified that when the elder Collins arrived on the scene, someone outside the car said "get the car out of here." As a result, according to Luper, Roche "slid under the wheel and just put it in gear, and it went." Neither Luper nor Roche could identify the person who made the statement; both said that the radio and heater were running in the car, and that the windows were rolled up at the time the statement was made. Stephen and his father both denied either hearing or making the statement. Hearsay evidence was received to the effect that Sorrells told Stephen that it was Luper who directed that the car be moved.

On this evidence the case was submitted to the jury which returned a verdict against both Collinses and Roche for $6,866. On appeal, the Collinses contend that the trial judge erred in overruling their motions for directed verdicts and in submitting to the jury "the question of whether or not appellant Collins's vehicle was left 'unattended' within the meaning of the Maryland Code when appellant [Stephen] left the car with the ignition keys in it for a brief period of time while his companions remained in the car."

Maryland Code (1957 Edition) Article 66½, Section 247 (now Section 11-1101—1970 Repl. Vol.), provides:

> "No person driving or in charge of a motor vehicle shall permit it to stand unattended without first stopping the engine, locking the ignition, removing the key, and effectively setting the brake thereon and, when standing upon any grade, turning the front wheels to the curb or side of the highway."

It is the purpose of the statute "to insure the safety of the public" by preventing "some unauthorized person from starting a car or to prevent the start of a car by gravity." *Hochschild, Kohn & Co. v. Canoles*, 193 Md.

276, 283-284. In other words, "the duty to the public created by the statute was primarily to protect against a theft of or tampering with a motor vehicle and to prevent them from moving under their own momentum should the brakes fail." *Liberto v. Holfeldt*, 221 Md. 62, 66. The term "unattended motor vehicle" has been held to mean "without anyone present [in the vehicle] who is competent to prevent any of the probable dangers to the public." *Lustbader v. Traders Delivery Co.*, 193 Md. 433, 439. As that case made clear, the "probable dangers to the public" are different under different circumstances. Thus, where a car parked on the brow of a hill could start by the force of gravity, attendance is ordinarily required by a person competent to stop the vehicle; on the other hand, where a car is not so parked as to be capable of moving by force of gravity, "the danger to be guarded against is the interposition of some human agency such as a mischievous child or a prospective thief" so that, in such circumstances, the attendance required by the statute need not be by a licensed or competent motor vehicle operator or even a person familiar with the mechanism or operation of an automobile. *Lustbader*, at p. 439. It has been held that the statute does not prohibit leaving the vehicle with its motor running, "if the car has someone in a position to prevent its moving." *Hochschild, Kohn & Co. v. Canoles, supra*, at p. 284. It was also held in *Lustbader* that the statute does not require a guarantee that a car cannot move or be moved to the damage of the public; it only requires the taking of reasonable precautions. In the final analysis, the statute is complied with when the operator of the vehicle "leaves with it a person who may be ordinarily capable of coping with the kind of emergencies that may be expected to arise under the particular circumstances of the case." *Lustbader* at p. 439-440. *See also Waltzinger v. Birsner*, 212 Md. 107; *McAllister v. Driever*, 318 F. 2d 513 (4th Cir.); 3 Blashfield Auto Law (3rd Ed.) Sections 116.44-116.48.

In the case before us, three persons remained in the

Collins' car when Stephen left it. That each of them were youthful and had been drinking beer does not, without more, mean that they were not persons who, under *Lustbader,* had "sufficient intelligence * * * [to be] capable of preventing any ordinary interference by unauthorized persons." (at p. 439) Under the circumstances of this case, none of the attendants left with the car were required to be competent motor vehicle operators. Luper, by his own testimony, was a person capable of preventing an unauthorized person from taking the car. That he did not do so does not mean that the car was left "unattended" within the meaning of the statute. We conclude, therefore, as a matter of law, that no violation of the statute was shown by the evidence.

Nor do we think there was any legally sufficient evidence in the case of any actionable negligence on Stephen's part in leaving the motor vehicle with the motor running in possession of three youths, one only fifteen years of age, all of whom had been drinking beer. A person cannot ordinarily be held liable in damages merely because he fails to make provision against a happening which he could not reasonably be expected to foresee. *Folk v. Bossler,* 256 Md. 232; *Owens v. Simon,* 245 Md. 404; *Waltzinger v. Birsner, supra; McVey v. Gerrald,* 172 Md. 595. That Roche's action in suddenly driving off in the vehicle in a negligent manner was an extraordinary result, not to be reasonably foreseen or anticipated by Stephen, is, we think, clear as a matter of law from the evidence adduced in this case. *Cf. Waltzinger v. Birsner, supra.*

But even if it could be assumed that Stephen was negligent in some respect, the evidence is clear that such negligence was not as a matter of law a proximate cause of Luper's injuries. Under the doctrine of proximate cause, negligence is not actionable unless it, without the intervention of any independent factor, causes the harm complained of; it involves the idea of continuity, that the negligent act continuously extends through every event, fact, act, and occurrence related to the tortious conduct

of the defendant and is itself the logical and natural cause of the plaintiff's injury. *Owens v. Simon,* 245 Md. 404, 411, citing *Holler v. Lowery,* 175 Md. 149, 161. In other words, the universally accepted rule as to proximate cause is that, unless an act, or omission of a duty, or both, are the direct and continuing cause of an injury, recovery will not be allowed; it must be the natural and probable consequence of the negligent act, unbroken by any intervening agency, and where the negligence of any one person is merely passive, and potential, while the negligence of another is the moving and effective cause of the injury, the latter is the proximate cause and fixes the liability. *Peterson v. Underwood,* 258 Md. 9, 16; *Bloom v. Good Humor Ice Cream Co.,* 179 Md. 384, 389. We think it plain beyond any question that the sole proximate cause of Luper's injuries was the independent, unexpected, extraordinary negligent action of Roche in suddenly driving off in the Collins' vehicle and striking a utility pole. *Cf. Buchanan v. Galliher,* 11 Md. App. 83.

Of course, there was no legally sufficient evidence to show any agency relationship between Roche and either Collins. That Roche and Luper heard someone outside the car direct that it be moved is hardly the equivalent of legally sufficient evidence that that order came from either Collins.

In denying the Collins' motions for directed verdicts, the trial judge stated his belief that it was a question of fact for the jury whether, under the circumstances, the unattended motor vehicle statute had been violated and whether Stephen was negligent and, consequently, he and his father liable to Luper. As indicated, we think the court was in error in permitting the case to go to the jury, there being no legally sufficient evidence of any negligence on Stephen's part. *See Fowler v. Smith,* 240 Md. 240; *Mazer v. Stedding,* 10 Md. App. 505.[2] Moreover, we

---

2. In so concluding, we have considered the rule that before it can be determined as a matter of law that one has not been guilty of negligence, the truth of all the credible evidence tending to sustain the claim of negligence must be assumed and all favorable in-

116

think the lower court should have granted the Collins'
motion for judgment N.O.V., and we will, therefore, re-
verse the judgment against the Collinses in Luper's fa-
vor, without awarding a new trial.[3]

*Judgment reversed; appellees*
*to pay costs.*

---

ferences of fact fairly deducible therefrom tending to establish
negligence drawn.

3. The fact that the Collinses did not object to the court's in-
structions to the jury does not, as contended by Luper, preclude
our review of the question whether the court erred in denying the
Collins' motions for directed verdicts made at the end of the entire
case.