617 A.2d 590

The HARTFORD INSURANCE COMPANY

v.

MANOR INN OF BETHESDA, INC., et al.

No. 415, Sept. Term, 1992.

Court of Special Appeals of Maryland.

Dec. 29, 1992.

226

Jill A. Reid (Donovan, O'Connell & Broderick, on the brief), Silver Spring, for appellant.

John D. Holler, Mt. Rainier, for appellee, Manor Inn of Bethesda, Inc.

Dawna M. Cobb, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. on the brief for appellee, State Dept. of Health and Mental Hygiene), Baltimore, for appellees.

Argued before GARRITY, WENNER and DAVIS, JJ.

DAVIS, Judge.

This appeal arises out of an insurance subrogation claim filed on September 7, 1990 in the Circuit Court for Montgomery County by Hartford Insurance Company (Hartford), appellant, against the State of Maryland (State) and Manor Inn of Bethesda, Inc. (Manor), appellees. The suit sought to recover $38,241.40 plus costs and expenses paid out to appellant's insured, William Wewer, for injuries and damages suffered in an automobile accident.

On November 28, 1990 the State filed a Motion to Dismiss for failure to state a claim. On December 4, 1990 the motion was denied. After discovery commenced, Manor filed a cross-complaint against the State. On September 25, 1991 Manor filed an amended cross-complaint against the State.

On October 23, 1991 the State filed a Motion for Summary Judgment opposed by appellant and Manor. On January 9, 1991 a hearing was held on the motion before the Honorable William M. Cave. After oral argument, the court granted the State's Motion for Summary Judgment against appellant and *sua sponte* granted summary judgment in favor of Manor against appellant in order to make both judgments final and appealable. On January 24, 1992 the court entered a written order to this effect. On February 6, 1992 appellant noted a timely appeal to this Court.

Appellant presents the following issues for our review:
1) Whether the trial court erred in granting the State of Maryland's Motion for Summary Judgment.
2) Whether the trial court erred in entering summary judgment in favor of Manor Inn of Bethesda, Inc., *sua sponte.*

For the following reasons, we shall affirm the orders of the Circuit Court for Montgomery County, granting summary judgment in favor of Manor and the State.

## FACTS

On August 20, 1988 Robert Lee Griffin was involuntarily committed to the Springfield State Hospital Center in Sykesville, Maryland, an inpatient facility for the mentally ill operated by the State Department of Health and Mental Hygiene. He had been transferred from Frederick Memorial Hospital, where two physicians had certified that Griffin met the criteria for involuntary admission. Under Md. Health–Gen.Code Ann. § 10–616(a)(2)(iii), the examining physician must certify that, among other things, involun-

tary admission is needed for the protection of the patient or another.

At the Center, Griffin was placed in the Solomon Ward, a high-security admissions ward reserved primarily for acutely disturbed patients. Between August 20, 1988 and October 19, 1988, pursuant to state statute, Griffin was given several hearings, in which it was determined each time that he was not competent for release.

On October 28, 1988 Griffin was discovered missing from the facility. He had last been seen at 2:45 p.m. by the staff on the ward. In an affidavit, Guy Garheart, Chief of Police at Springfield Hospital Center, stated that Springfield's elopement policy was fully enforced in the case of Griffin's elopement. Once Griffin was discovered missing, identifying characteristics were relayed to the appropriate law enforcement agency along with a request that the agency send out a teletype concerning the elopement. Griffin was described as having a scar on his left forearm and wearing a brown jacket.

On October 31, 1988 Montgomery County Police officers found Griffin wandering the streets of Bethesda, Maryland. Believing him to be homeless and in need of emergency shelter, the officers took Griffin to the Manor Inn of Bethesda located at 11410 Rockville Pike, Rockville, Maryland, where he was given a room. Manor provided the room pursuant to a thirteen-year-old verbal agreement with the Montgomery County Department of Social Services, wherein Manor agreed to provide overnight shelter to homeless and wayward persons in exchange for a single rate of $54.00 plus tax of 10 percent. The officers did not notify Springfield Hospital or the State Police of their contact with Griffin.

On the morning of November 1, 1988 an employee of Manor parked a 1985 Chevrolet van in the parking lot of the Manor Inn, directly in front of Griffin's room. The employee exited the van, left the doors unlocked, and left the keys in the ignition. Manor disputed that the van was left

unattended, claiming that the employee was working in the vicinity. Another Manor employee then saw Griffin get in the van and drive away.

Approximately thirty minutes later, appellant's insured, William Wewer, was travelling southbound on East Avenue at the intersection with Bradley Boulevard in Bethesda. At the same time, Griffin was in the stolen van travelling eastbound on Bradley Boulevard. According to the State Accident Report, Griffin weaved on the roadway, crossed the centerline at a high rate of speed, drove over the curb onto East Avenue, and struck Wewer, who had stopped his 1984 Porsche 944 at a stop sign.

As a result of the collision, Wewer's vehicle was a total loss. Wewer also sustained personal injuries. Pursuant to an insurance policy, appellant compensated Wewer $38,-241.40 for the total loss of his vehicle, personal injuries, lost wages, and pain and suffering.

In its complaint, appellant alleged various counts of negligence against the State and Manor. Appellant alleged that the State had a duty to supervise Griffin properly and to detain him, and that the breach of this duty had been a proximate cause of Wewer's injuries. Appellant also alleged that the negligence of Manor's employee was a proximate cause of the insured's injuries.

Following a hearing, the court granted summary judgment in favor of both defendants. The court reasoned that the State owed no duty to Wewer since he was not in a group identifiable to the State prior to the accident. The court, *sua sponte*, determined as to Manor that the theft of the car and subsequent accident were not foreseeable, and therefore appellant could not show the necessary causation. Appellant appeals both orders of the court.

## LEGAL ANALYSIS

It is well settled that summary judgment procedure is not a substitute for a trial but merely a preview to determine whether there exists a factual controversy re-

quiring trial. *Foy v. Prudential Ins. Co.*, 316 Md. 418, 422, 559 A.2d 371 (1989). Where the moving party has set forth sufficient grounds for summary judgment, the party opposing the motion must show with some precision that there is a genuine dispute as to a material fact. *Id.* If there is any genuine dispute as to any material fact, summary judgment would not properly be granted. *Id.* A material fact is one that will "somehow affect the outcome of the case." *Seaboard Surety v. Kline, Inc.*, 91 Md.App. 236, 242, 603 A.2d 1357 (1992) (citations omitted). A dispute as to a fact "relating to grounds upon which the decision is not rested is not a dispute with respect to a *material* fact and such dispute does not prevent the entry of summary judgment." *Id.* at 242–43, 603 A.2d 1357, quoting *Salisbury Beauty Schools v. State Board of Cosmetologists*, 268 Md. 32, 40, 300 A.2d 367 (1973) (emphasis in original). Similarly, "[i]n a summary judgment proceeding even where the underlying facts are undisputed, if those facts are susceptible of more than one permissible inference, the choice between those inferences should not be made as a matter of law, but should be submitted to the trier of fact." *Foy*, 316 Md. at 422–23, 559 A.2d 371, quoting *Fenwick Motor Co. v. Fenwick*, 258 Md. 134, 138, 265 A.2d 256 (1970) (citations omitted).

Appellate review of a circuit court's decision to grant or deny summary judgment is also well settled:

> In reviewing a summary judgment, an appellate court has the same information from the record and decides the same issues of law as the trial court. It follows then that the proper standard for reviewing the granting of a summary judgment motion should be whether the trial court was legally correct.

*Heat & Power v. Air Products*, 320 Md. 584, 591–92, 578 A.2d 1202 (1990) (citations omitted). With the applicable standard of review in mind, we now turn to the facts of this case.

Manor Inn

Appellant contends that Manor is liable for Wewer's injuries pursuant to a violation of Md.Transp.Code Ann. § 21–1101 by the employee of Manor who left the keys in the van's ignition. Appellant argues that violation of this statute is legally sufficient evidence of negligence that should have precluded summary judgment.

 "The violation of a statute may furnish evidence of negligence," *Atlantic Mutual v. Kenney,* 323 Md. 116, 124, 591 A.2d 507 (1991), citing *Aravanis v. Eisenberg,* 237 Md. 242, 259–60, 206 A.2d 148 (1965), "but only where the person alleging negligence is within the class of persons sought to be protected, and the harm suffered is of the kind which the statute was intended, in general, to prevent." *Kenney,* 323 Md. at 124, 591 A.2d 507. Similarly, "[e]ven though the violation of a statute may create a *prima facie* presumption of negligence, the mere breach is not *per se* enough to make a violator thereof liable for damages." *Liberto v. Holfeldt,* 221 Md. 62, 65, 155 A.2d 698 (1959). It is incumbent upon the plaintiff "to show not only a duty owed to the plaintiff and a breach thereof, but also to establish that the breach of that duty had not been interrupted by a break in the chain of causation." *Id.* In other words, the negligence must be a proximate cause of the injury. *Erie Ins. Co. v. Chops,* 322 Md. 79, 84, 585 A.2d 232 (1991).

 The pertinent provision of the Transportation Article, § 21–1101, entitled **Unattended Motor Vehicle,** reads as follows:

(a) *Duty of driver upon leaving unattended vehicle.*—Except as provided in subsection (c) of this section, a person driving or otherwise in charge of a motor vehicle may not leave it unattended until the engine is stopped, the ignition locked, the key removed, and the brake effectively set.

"The purpose * * * [of the statute] was either to prevent some unauthorized person from starting a car or to prevent

the start of a car by gravity. In either case the object was protection of the public." *Liberto,* 221 Md. at 65, 155 A.2d 698, quoting *Hochschild, Kohn & Co. v. Canoles,* 193 Md. 276, 283, 66 A.2d 780 (1949). Similarly stated, "[t]he duty to the public created by the statute was primarily to protect against a theft of or tampering with a motor vehicle and to prevent them from moving under their own momentum should the brakes fail." *Liberto,* 221 Md. at 66, 155 A.2d 698.

The Court of Appeals has held that leaving a key in the ignition of an unattended vehicle would be a violation of the statute and such violation may be evidence of negligence. *Khoyan v. Turner,* 255 Md. 144, 147, 257 A.2d 219 (1969). "The term 'unattended motor vehicle' has been held to mean 'without anyone present [in the vehicle] who is competent to prevent any of the probable dangers to the public.' " *Collins v. Luper,* 12 Md.App. 109, 113, 277 A.2d 445, *cert. denied,* 263 Md. 716 (1971), quoting *Lustbader v. Traders Delivery Co.,* 193 Md. 433, 439, 67 A.2d 237 (1949).

■ It is uncontroverted that the Manor employee who drove the van left the key in the ignition. The employee was also far enough away to render the van clearly "unattended." Thus there was a violation of the statute that could be evidence of negligence. *See Khoyan, supra.*

■ Our analysis, however, does not end there. Appellant must still prove that Manor breached its duty of care to Wewer and that the breach was the proximate cause of his injuries. *Brill v. Wilbanks,* 222 Md. 248, 249, 159 A.2d 657 (1960). As the Court of Appeals stated in *Peterson v. Underwood,* 258 Md. 9, 16, 264 A.2d 851 (1970):

Proximate cause ultimately involves a conclusion that someone will be held legally responsible for the consequences of an act or omission. This determination is subject to considerations of fairness or social policy as well as mere causation. Thus, although an injury might not have occurred "but for" an antecedent act of the defendant, liability may not be imposed if for example the

negligence of one person is merely passive and potential, while the negligence of another is the moving and effective cause of the injury. *Bloom v. Good Humor Ice Cream Co.,* 179 Md. 384, 18 A.2d 592 (1941), or if the injury is so remote in time and space from defendant's original negligence that another's negligence intervenes. *Dersookian v. Helmick,* 256 Md. 627, 261 A.2d 472 (1970); *Liberto v. Holfeldt,* 221 Md. 62, 155 A.2d 698 (1959). The lower court found that the negligence of the Manor employee was merely passive, so the company could not be held responsible "for the actions of Mr. Griffin in negligently running into somebody." The court also noted that violation of the statute "does not per se give rise to liability when the injury is caused by an intervening person who comes and negligently operates that motor vehicle." Before we address the lower court's decision, we believe that a brief discussion of cases that have interpreted the Unattended Vehicle statute would be helpful.

■ We first note that, while the Courts of this State have never definitively held that the Unattended Vehicle statute applies to vehicles parked on a private roadway, *Waltzinger v. Birsner,* 212 Md. 107, 116, 128 A.2d 617 (1957); *see McAllister v. Driever,* 318 F.2d 513, 516 (4th Cir.1963), the statute still may be used as a standard of care. *Waltzinger, supra.* The Manor Inn parking lot is apparently open and accessible to the public. The public faces the same dangers from unattended vehicles as it would on the street or in a public parking lot. We decline, however, to hold definitively that § 21–1101 applies to vehicles parked on private property. We merely assume for the purposes of our discussion in this case only that the statute is applicable.

Turning to the history of the statute, in *Hochschild, Kohn & Co. v. Canoles,* 193 Md. 276, 66 A.2d 780 (1949), the Court was faced with the application of Md.Ann.Code art. 66½, § 192 (1947 Supp.), a provision virtually identical to today's Unattended Vehicle statute. In *Hochschild,* the defendant's driver left his vehicle unattended, running, with

the brake improperly set. The truck then started to roll down a hill where it eventually struck the plaintiff. The lower court found defendant liable, and the company appealed.

The Court of Appeals affirmed the decision, finding that the defendant's negligence was a violation of the statute and a proximate cause of the accident. *Id.* at 284, 66 A.2d 780. The Court also noted the primary purpose of the statute:

> The purpose of Section 192 was either to prevent some unauthorized person from starting a car or to prevent the start of a car by gravity. In either case the object was the protection of the public. The result was to be accomplished not only by turning off the motor and locking the ignition and taking the key away, which would make it difficult for anyone except a mechanic to start the car, but also by the provision that the brakes must be set and the wheels turned to the curb, so that if the car, for any reason, should start of its own accord, it would strike the curb and this would operate as a brake or means of preventing any further motion.

*Id.* at 283, 66 A.2d 780. From the Court of Appeals construction of this statute, we glean two points. First, the statute's drafters clearly never envisioned the relative ease and frequency with which automobiles are stolen today. Second, the purpose of the statute was ostensibly to prevent an unattended motor vehicle from moving off, either because of gravity or its own running engine, and hitting someone or something.

Several years later, in *Liberto, supra,* the Court of Appeals was required to construe the statute with respect to the failure to remove the key from the ignition of an unattended vehicle. In *Liberto,* the defendant left her car unattended in front of an animal hospital with the key in the ignition. The car was stolen, and five days later, across town, was crashed into the plaintiff. The lower court granted a motion for directed verdict to Liberto, and the plaintiff appealed.

Affirming the lower court, the Court of Appeals first noted the general rule that, even if the defendant had violated the statute, the plaintiff must still show the breach of a duty specifically owed to him and that there was no break in the chain of causation. *See Brill v. Wilbanks*, 222 Md. 248, 249, 159 A.2d 657 (1960). The Court then held that

the negligence of the defendant was not the proximate cause of the injury both on the basis that it was not foreseeable that the thief would be involved in an accident five days later and that the negligence of the thief was an independent intervening cause which was in fact the proximate cause of the accident.

*Liberto*, 221 Md. at 67, 155 A.2d 698. The Court quoted *Corinti v. Wittkopp*, 355 Mich. 170, 93 N.W.2d 906 (1959), where that court, interpreting a similar statute, stated:

"To our knowledge, no court has yet held such a statute * * * to impose upon a driver a duty to remove his keys running to the benefit of any person whom a thief or his successor in possession might meet and injure *hours, days or weeks after the theft.*"

*Id.* (emphasis added). The Court also found that the injury was too remote, both in time and space, from the defendant's negligent act for liability to remain. *Liberto*, 221 Md. at 66, 155 A.2d 698.

In *Brill v. Wilbanks*, 222 Md. 248, 159 A.2d 657 (1960), the plaintiff was struck by an automobile driven by a thief who had stolen it from the defendant's used car lot. Relying on *Liberto*, the Court ruled that the lower court's order granting summary judgment for the owner of the automobile was proper. *Brill* at 249–50, 159 A.2d 657.

The same result on similar factual circumstances was reached in *Dersookian v. Helmick*, 256 Md. 627, 261 A.2d 472 (1970). The car was stolen from a car dealership and five days later was involved in an accident with the plaintiff. Again relying on *Liberto*, the Court affirmed summary judgment for the car dealership. The Court also emphasized that the negligence, if any, was too remote to

be the proximate cause of the injuries. *Dersookian* at 634, 261 A.2d 472.

More recently in *Tri–State Tr. & Equip. Co. v. Stauffer*, 24 Md.App. 221, 239, 330 A.2d 680, *cert. denied*, 275 Md. 757 (1975), this Court, commenting on *Liberto* and *Maggitti v. Cloverland Farms Dairy*, 201 Md. 528, 95 A.2d 81 (1953), a case that involved a statute that prohibited "double parking," stated that those cases

> involved statutes not intended to protect other users of the public highways against the negligent operation of motor vehicles and involved circumstances absent any volitional connecting link between the statute violator and the operator of the vehicle causing harm. The violators of the statute in those cases would not reasonably have foreseen that the ultimate result would have occurred as a natural consequence of their violations.

■ Appellant attempts to distinguish *Liberto* and its progeny by arguing that the injuries in the case *sub judice* were not as remote in time and space as were the injuries in those cases. Indeed, the accident here occurred a mere thirty minutes after the van was stolen. Foreseeability is not limited, however, to only questions of remoteness, but is connected to the duty owed as well.

> Foreseeability as a factor in the determination of the existence of a duty involves a prospective consideration of the facts existing at the time of the negligent conduct. Foreseeability as an element of proximate cause permits a retrospective consideration of the total facts of the occurrence, including the criminal acts of a third person occurring after the original act of negligence of a tortfeasor.

*Henley v. Prince George's County*, 305 Md. 320, 336, 503 A.2d 1333 (1986). Appellant correctly argues that the injuries complained of were probably not too remote to destroy proximate cause. It is the injuries themselves that were not foreseeable. Griffin's negligent conduct was an intervening cause that Manor was not bound to anticipate or

guard against. *McAllister v. Driever*, 318 F.2d 513 (4th Cir.1963); *see Liberto*, 221 Md. at 67, 155 A.2d 698. Absent a duty to appellant, summary judgment in favor of Manor was proper. *See Liberto* at 67, 155 A.2d 698 (duty and causation normally questions for trier of fact unless facts are undisputed and only one reasonable inference can be drawn so that issue may be resolved as matter of law).[1]

■■■ In view of this apparent extension of liability, we hold that a person driving or otherwise in charge of a vehicle within the meaning of Md.Transp.Code Ann. § 21–1101 who leaves the vehicle unattended with the key in the ignition in violation of the statute and who then discovers the vehicle stolen is not liable to persons who are injured or suffer damages proximately caused by the negligent driving or operation of the vehicle by thieves or other unknown or unauthorized third-party intermeddlers.

Our holding is independent of whether the injuries are remote in time or space to the negligent failure of a driver to remove the keys from the ignition. Our decision would be the same if the injuries or damage were one minute or one year after the negligent act. In either case, the person leaving the keys would not be liable since the possibility that the vehicle would be negligently driven by a thief and the cause of damages is not foreseeable and need not be anticipated or guarded against.

We also note that our holding in no way affects earlier decisions that have attached liability to a driver where the vehicle, left unattended in violation of the statute, moves away because of gravity or under its own power, causing damage. Nor do we inquire into what other types of third-party negligence could relieve from liability a driver who violates the statute. We simply hold that, when the key is

---

1. We also conclude that leaving one's key in the ignition is merely passive and potential negligence and where the negligence of another is the moving and effective cause of the injury, as the action of the thief was in this case, the latter act is the proximate cause of the accident. *See Liberto*, 221 Md. at 67, 155 A.2d 698.

left in the ignition of an unattended vehicle, the taking of that vehicle by an unknown or unauthorized third party who negligently causes damages is an independent and intervening factor, not reasonably foreseeable to the driver, thereby relieving the owner or person in charge of the vehicle from liability for damages caused by the third-party's negligent driving or operation of the vehicle.

The trial court opined that in today's world a thief can steal a car without ignition keys nearly as fast as if the keys were available. We leave it to the Legislature to determine whether car owners' statutory duty to safeguard their cars runs to the benefit of those who may be injured by a negligently driven stolen car.

### Negligence of the State

Appellant next argues that the court erred when it granted summary judgment in favor of the State. Appellant contends that the State's negligent failure to control Griffin was the proximate cause of Wewer's injuries. A determination of the State's legal responsibility requires us to consider whether there exists (1) a duty arising from a special relationship and (2) foreseeability in the context of the identifiability of the victim. We agree with the argument advanced by the State.

To establish a cause of action in negligence, a plaintiff must prove the existence of four elements: a duty owed to him (or to a class of which he is a member), a breach of that duty, a legally cognizable causal relationship between the breach of a duty and the harm suffered, and damages. *E.g. Jacques v. First Nat'l Bank,* 307 Md. 527, 531, 515 A.2d 756 (1986); *Cramer v. Housing Opportunities Comm'n,* 304 Md. 705, 712, 501 A.2d 35 (1985); *Scott v. Watson,* 278 Md. 160, 165, 359 A.2d 548 (1976); *Peroti v. Williams,* 258 Md. 663, 669, 267 A.2d 114 (1970). We shall first focus on whether the State owed a duty to the insured.

In general, "a private person is under no special duty to protect another from criminal acts by a third person, in the absence of statutes, or of a special relationship." *Scott,*

278 Md. at 166, 359 A.2d 548; *see Restatement (Second) of Torts* § 315 (1965) (no duty to control third person's conduct so as to prevent physical harm to another unless a special relation exists between actor and third person, or between actor and the other). "The relations between the actor and the third person that give rise to such a duty are set forth in Restatement §§ 316–19." *Lamb v. Hopkins,* 303 Md. 236, 243, 492 A.2d 1297 (1985) (footnote omitted). Relevant to our discussion is *Restatement,* § 319, entitled "Duty of Those in Charge of Person Having Dangerous Propensities." It reads as follows:

> One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.

*Lamb,* 303 Md. at 243, 492 A.2d 1297. The Court of Appeals has expressly adopted § 319 as the law of this State governing the duty of those in charge of persons having dangerous propensities. *Id.* at 245, 492 A.2d 1297.

Appellee, the State of Maryland, admits that a "special relationship existed between the State and Mr. Griffin while Mr. Griffin was in custody as a Springfield patient. This custodial relationship imposed on the State a general duty to prevent Mr. Griffin from causing physical harm to others." As such, we will not engage in a discussion of whether Griffin was under the "control" of the State within the meaning of § 319.

While admitting a duty existed, the State argues that it had no duty to appellant's insured, Wewer, "because he was an unforeseeable plaintiff." Relying on this Court's decision in *Furr v. Spring Grove State Hosp.,* 53 Md.App. 474, 454 A.2d 414, *cert. denied,* 296 Md. 60 (1983), the State contends that it only owed a duty to a readily identifiable victim. The State also argues that the accident was too remote in time from the alleged negligence, eliminating proximate cause. Finally, the State asks this Court on public policy grounds to avoid "[i]mposing strict liability

upon the State for all harms caused by escaped patients [which] would most likely have a chilling effect on the State's willingness to give patients more freedom as they prepare for life in the community." [2]

We addressed a similar, although not identical, set of facts in *Furr, supra.* In that case, a young boy was murdered by a young, sexual deviant who had eloped from Spring Grove State Hospital where he had been a "voluntary" admittee. *Id.* 53 Md.App. at 478, 454 A.2d 414. As a voluntary admittee, the patient had few restrictions and could leave the hospital with relative ease. The decedent's estate and his parents sued the hospital and two doctors for, among other things: negligent misdiagnosis and recommendations, negligently allowing the patient to abscond, and negligently failing to expedite his readmission and/or notify authorities of his reappearance and disappearance. *Id.* at 480–81, 454 A.2d 414. The State was dismissed from the action, and summary judgment was granted in favor of the two doctors.

On appeal to this Court we affirmed, deciding that the duty of a psychiatrist, if any, to protect others from the acts of a patient extends only to those potential victims who are "readily identifiable." *Id.* at 489, 454 A.2d 414; *see Tarasoff v. Regents of the University of California,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (1976); *Thompson v. County of Alameda,* 27 Cal.3d 741, 167 Cal.Rptr. 70, 614 P.2d 728 (1980). We noted that, even if the doctors should have known of the patient's dangerous propensities and should have restrained him, "whom should they have warned had they failed to do so?" *Furr,* 53 Md.App. at 489, 454 A.2d 414.

The State asserts that, under the decision in *Furr,* appellant's insured was not a readily identifiable victim and thus the State owed him no duty of care. We agree.

---

**2.** The State does not raise the defense of governmental immunity on this appeal. Accordingly, we will not address that issue. Md.Rule 8–131.

Wewer was an unidentified plaintiff at the time of Griffin's elopement from Springfield Hospital Center. Even if the State knew Griffin was inclined to steal a parked car and negligently crash it into another driver, the State had no way to warn Wewer, the injured plaintiff, prior to the incident. *See Furr*, 53 Md.App. at 489, 454 A.2d 414. Absent any duty owed to Wewer, we hold as a matter of law that the State cannot be liable in negligence for the injuries to appellant's insured. Accordingly, summary judgment in favor of the State was proper.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.