## LOUIS SALOWITCH *v.* ISADOR KRES ET AL.

*Master and Servant—Loan of Employee—Automobile Accident.*

In an action for injuries caused by defendant's truck, evidence. if true, that defendant's employee, who was at the time of the accident driving the truck, had taken the truck without authority or acquiescence on defendant's part, and was at the time using it for some purpose or business other than defendant's, was sufficient to rebut any presumption that he was acting within the scope of his employment.                    pp. 29-33

Where the owner of an automobile has loaned it and also the driver, his general servant, to another, for use in that other's business, wholly apart and distinct from the business of the owner, and not in any manner, directly or indirectly, in furtherance of the owner's business, the owner is free from liability for an injury caused by the negligence of the driver while so occupied.                              p. 30

When one lends his servant to another for a particular employment, the servant, while so employed, is to be regarded as the servant of him to whom he is lent.              pp. 30, 31

A dealer in auto parts and motor trucks, who loaned a truck and one of his employees, not employed by him as a driver, to his father, for the purpose of the latter's grocery business, was not liable for the negligence of such employee while driving the truck for the father.                    pp. 31-34

*Decided January 15th, 1925.*

Appeal from the Superior Court of Baltimroe City (CARROLL T. BOND, J.).

Action by Isador Kres and others, trading as West Baltimore Wall Paper Company, against Louis Salowitch, trading as Salowitch Auto-Part Company. From a judgment for plaintiffs, defendant appeals. Reversed.

The cause was argued before PATTISON, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*H. Mortimer Kremer,* with whom was *Albert J. Fleischmann* on the brief, for the appellant.

*William L. Marbury* and *L. Wethered Barroll,* submitting on brief, for the appellees.

DIGGES, J., delivered the opinion of the Court.

The judgment in this case was entered upon the verdict of a jury in the Superior Court of Baltimore City in favor of the appellees for $168.00, being the amount paid by the appellees for repairing damage to their truck occasioned by a collision between it and the truck of the appellant. From that judgment the appellant has taken this appeal. The single exception contained in the record is to the action of the court below in refusing certain prayers of the appellant. At the close of the testimony in the case, the appellees, plaintiffs below, did not offer any prayers, and the appellant offered nine prayers designated as defendant's A, B, C, D, E, F, G, H and I prayers. The court rejected defendant's A, B, C, D, H and I prayers, and this action of the court constitutes the single bill of exception in the case. At the argument in this Court and in the brief of the appellant, the exception to the action of the court in rejecting defendant's C, D, H and I prayers was abandoned, and the appellant only asks that we review the action of the court in rejecting its A and B prayers. These were the usual demurrer to the evidence prayers and ask for an instructed verdict for the defendant; so that our province in this case is confined to deciding the correctness of the action of the court below in refusing these prayers. The appellant admits the ownership of the truck which caused the damage, the general employment of the driver of that truck, and his negligence as being the cause of the collision. He, however, contends that he is not liable for the reason that the uncontradicted evidence

in this case shows that Murphy, the driver of the truck, was not acting within the scope of his employment at the time of the accident, or that at said time he was the servant of some other person and not the servant of the appellant. In order to determine the soundness of this contention we are required to examine all of the evidence in the case. Upon a careful examination of the record we find these facts undisputed: That the appellant, Louis Salowitch, trading as the Salowitch Auto-Part Company, was engaged in the business of dealing in auto parts and used serviceable trucks, his place of business being Clifton Avenue and Monroe Street in the City of Baltimore; that he had been so engaged for five years prior to the accident; that he was the owner of the truck causing the damage complained of, and that the truck at the time of the accident was being driven by Murphy, who was in the general employ of the appellant. There is conflict in the testimony as to how long Murphy had been employed by the appellant, the appellant himself testifying that he had engaged him about four days before the accident, and Murphy testifying that he had been employed about a month and a half. This, however, is immaterial for the purposes of this decision. That on the day of the accident the appellant was not at his place of business but had gone to Washington, going direct from his residence and not having been at his place of business at all that day; that the accident occurred at the corner of Lafayette and Pennsylvania Avenues, about 9.30 or 10 o'clock A. M.; that at the time of the accident Morris Salowitch, brother of Louis Salowitch, was in the truck sitting alongside of Murphy the driver; that Morris Salowitch lived with his and the appellant's father, who conducted a grocery business at 250 South Eden Street, and also lived at that place; that the duties of Murphy were tearing down machines and working in the automobile shop of the appellant; that he had no operator's license to drive a car; that after the accident Murphy drove the truck to the home of the appellant's father, the appellant's brother accompanying him, and left it at that place, going immediately

thereafter out of the State and not returning until appre-
hended and taken into the traffic court.   These facts are
established by the testimony offered on behalf of the plain-
tiff and the defendant and are uncontradicted.   The evidence
as to what occurred at the place of business of the appellant
on the morning of and before the accident, as related by
Murphy, who testified for the plaintiff, and the evidence of
the appellant and his brother, Morris, is in direct conflict
one with the other, and it is impossible to reconcile the two
versions.   The testimony of Murphy is, that on the morning
of the accident, a little while after he went to work, "Mr.
Salowitch's brother came up and wanted a truck; Mr. Salo-
witch was not there so his brother went to the telephone to
call him up, then he called me to the telephone and I spoke
to Mr. Louis Salowitch and Mr. Salowitch told me to take
the truck and drive it for his brother; I took the truck and
drove it and we were hauling some groceries, and on our
way back to Mr. Salowitch's place, I had a collision at
Pennsylvania and Lafayette Avenues."   This was in Mur-
phy's examination in chief, and on cross-examination he
said:   "I was not employed to drive automobiles; it was
about half past nine or ten o'clock that morning when Mr.
Salowitch's brother came to the place and, after a conversa-
tion with me, he went to the telephone to speak to Mr. Salo-
witch, my employer; I recognized his voice and while I can't
remember exactly what the conversation was, he told me to
take the truck out and drive for his brother and I did it.
* * * Mr. Salowitch told me to go with his brother and haul
groceries for his father.   Yes, I admit that immediately
after this accident I ran away and went out of town; I
went to Altoona, Pennsylvania, the same day."   The above
quoted testimony of Murphy was all of the testimony offered
on behalf of the plaintiff bearing upon the question of
whether or not Murphy was the servant of the appellant
at the time of the accident, and was at that time acting
within the scope of his employment.   The testimony of the
appellant in his own defense was that he had employed

Murphy about four days before the accident and he was employed to tear down machines and work in the shop, and he had nothing to do with the driving or operation of machines; that Murphy never had any authority from him to operate this machine; that the morning of the accident he, the witness, went to Washington, leaving Baltimore about eight o'clock; that he did not go to his place of business at all on that day, but next morning went to the shop and his attention was called to damage to his truck by his foreman saying, "Look what Murphy done," and showing him a little two-ton Packard with the bumper smashed and the radiator leaking. He further testified that he did not have such a conversation on the telephone as Murphy testified to here, and did not remember calling Murphy or anybody else that morning; that Murphy said it was between 9.30 and 10 o'clock, and that he, the witness, was in Washington at 10 o'clock. The witness further testified that Murphy had no authority to drive any machine belonging to the witness, and that Murphy had testified at the traffic court that he, Murphy, "did not have my permission to drive that car that morning." The witness Morris Salowitch, brother of the appellant, testified as follows: "This is the way I came to be on the truck. On Sunday afternoon my brother, Louis, was visiting my mother with his wife and he told me he was to go to Washington Monday morning; I came up to his yard to see him before he left, but he was gone already; I came up about half-past seven or eight o'clock; I must have got there quarter after eight. I told John, the colored man, that Louis wasn't there, I was going down town. I hung around awhile and I was watching them tear down cars—I liked to see how they did it; I told him I was going down town about half-past nine or ten o'clock and the driver there, Murphy, he told me he could take me down, he said he was going that way and I went with him; no, I had not seen my brother that morning; I was down at the place for about an hour, some thing like that; John was boss there and giving orders, telling Murphy to tear down certain parts

of the truck, tearing certain parts away and put iron on a certain pile; I had seen Murphy around there once before; he was with one of the drivers from a big truck that came in to be repaired; I told Murphy I was going down town and of course Louis didn't come back; he said I can take you down and I went with him. He went from Clifton to Fulton, up Fulton to North, North to Pennsylvania and he turned down and he went down to near Lafayette, and I seen the big Republic truck; I recognized it with a lot of packages and right smart speed; I don't know how fast and Murphy turned in short and he hit him in the back. * * * We didn't have any groceries on the truck and we didn't have any on the truck before this accident. I was only on the truck about five minutes, just as long as it takes to run down to that street there; we hadn't gone anywhere else between my brother's place and the scene of the accident; Murphy was taking me home; I asked him where are you going, he said that is all right, he was going down that way; I had not seen Murphy drive any car before for my brother." On cross-examination witness testified: "It was about half-past nine when we left my brother's place and the accident happened in about five minutes, just as long as it takes us to get to this place; no, sir, I had not been around delivering groceries, Murphy was taking me down town, he was taking me to my home."

The law applicable to this class of cases is familiar and well settled by decisions of this Court, to the effect that where the ownership of the vehicle causing the collision is in the defendant and the driver thereof is in the general employ of the defendant, there is a reasonable presumption that at the time of the accident the driver is the servant of the defendant and acting within the scope of his employment. *Vonderhorst Brewing Co. v. Amrhine,* 98 Md. 406; *Stewart Taxi Service Co. v. Roy,* 127 Md. 70; *Dearholt Motor Sales Co. v. Merritt,* 133 Md. 323. The most recent expression of this rule is the case of *Jordan-Stabler Co. v. Tankersly,* 146 Md. 454, where the Court said: "This Court

has held that in a collision caused by an automobile operated by the servant of the owner there is a reasonable presumption that the servant was acting in the scope of his employment and upon the business of his master, and that the burden of overcoming this presumption is upon the master by showing that the servant was engaged in business other than his employer's." It is equally well established that this presumption is a rebuttable one and may be rebutted by the uncontradicted testimony offered on behalf of either the defendant or the plaintiff, or both, and when so rebutted the case ought not to go to the jury. *Symington v. Sipes,* 121 Md. 313; *State, use of Bebelius, v. Benson,* 129 Md. 693; *Dearholt Motor Sales Co. v. Merritt,* 133 Md. 323; *Pollock v. Watts,* 142 Md. 403. Therefore, the present case presents one in which the uncontradicted evidence establishes the ownership of the truck by the appellant and the general employment by the appellant of Murphy, the driver, thus creating the presumption that he was the servant and agent of the appellant, acting within the scope of his employment, which, together with the negligence of Murphy, would be sufficient to entitle the case to be submitted to the jury, and such evidence upon which the jury might render a verdict for the plaintiff; but if the record discloses that this presumption is rebutted by the uncontradicted evidence offered on behalf of either the appellant or appellee, conclusively showing that the driver Murphy at the time of the accident was not acting within the scope of his employment, there would be no evidence upon which the jury could legally render a verdict for the plaintiff, for the reason that the presumption has been fully met and overcome. Whether or not the evidence, as disclosed by the record, is of such a character as will overcome the presumption, is a question of law for the court. If the evidence offered on behalf of the defendant, which in respect to this point is fully set out herein, is true, the plaintiff would not be entitled to recover, because it clearly appears therefrom that Murphy took the truck of the defendant without any authority or acquiescence by the defendant, and

at the time of the accident was using it for his own or some one other than the master's business. This proposition is fully sustained by the authority of *Symington v. Sipes, Debelius v. Benson, Pollock v. Watts,* and *Jordan-Stabler v. Tankersly,* hereinbefore cited. If the plaintiff's right to recover rested solely upon the presumption which the undisputed evidence of both plaintiff and defendant created and was met by the evidence of the defendant, we would have no hesitation in holding that the presumption had been fully rebutted and that the court was in error in refusing to grant the prayers of the defendant for an instructed verdict in his behalf. We, however, have additional testimony on behalf of the plaintiff from its witness, Murphy, the driver of the truck, and we must examine this testimony, because if it is in conflict with the testimony offered by the defendant to rebut the presumption, there would be presented a case for the jury and not for the court, as it is the jury's province to pass upon the credibility and weight of the testimony. In making this examination we find that the testimony of Murphy, if true, although contradicted by the defendant, presents a case where the owner of an automobile has loaned it and the driver, his general servant, to another, for use in that other's business, wholly apart and distinct from the business of the owner, and not in any manner, directly or indirectly, in furtherance of the owner's business. Whether or not the law under such conditions relieves the owner of liability is an important question, and upon its decision this case must depend. In the case of *Symington v. Sipes, supra,* Judge Urner said: "The liability of the appellant, upon the ground that the chauffeur was in the service and pay of the appellant's brother during the trip to and from Virginia, was disputed. We do not find it necessary to pass upon these questions, as the point we have considered is conclusive of the case." This direct point has never been passed upon by this Court, although we have employed language in former cases which would tend to indicate our opinion, should the point be directly presented. In the case

of *Sacker v. Waddell,* 98 Md. 43, Judge Boyd used this language: "The master may so hire or loan his servant to another for some special service, as that he will, as to that particular service, become the servant of such third person. If the master has parted with all power of control over the servant and permits the third person to make such use of him as he may deem proper, he may *quoad* that service, be the servant of the third person, and not of the general master." In the more recent case of *Sugar Refining Co. v. Gilbert,* 145 Md. 251, the Court, speaking through Judge Pattison, quoted with approval the language of Judge Boyd in *Sacker v. Waddell,* and added: "In 18 *R. C. L.* 757, sec. 223, it is said: 'There is no doubt that the general servant of one person may become the servant of another by submitting himself to the control and direction of the other. In such a case the servant becomes the fellow servant of the servants of the person under whose control he comes, and neither his general master nor his special master is liable if he is injured by the negligence of one of the other servants.' " In the same case there was cited with approval the case of *Delory v. Blodgett,* 185 Mass. 126, in which case the court said: "When one person lends his servant to another for a particular employment, the servant, for anything done in that particular employment, must be dealt with as the servant of the man to whom he is lent, although he remains a general servant of the person who lent him. * * * The test is, whether, in the particular service, which he is engaged to perform, he continues liable to the direction and control of his master, or becomes subject to that of the party to whom he is lent or hired." There is nothing in the cases of *Sacker v. Waddell,* and *Sugar Refining Co. v. Gilbert,* which is in conflict with the opinion in the case of *Bentley, Shriver & Co. v. Edwards,* 100 Md. 653. In that case the owner of the automobile truck, Burmeister, was engaged in the business of hiring trucks, accompanied by drivers, to various parties who needed such service. The particular truck was at the time of the accident being driven by Ed-

wards, the plaintiff in that case, and was engaged in hauling articles of merchandise for Bentley, Shriver & Co., that company indicating to the plaintiff what merchandise he was to haul and where he was to place same. The accident occurred while the plaintiff was unloading the truck in front of the defendant's place of business, and was occasioned by the negligence of a general servant of the defendant. It was contended by the defendant that the plaintiff was a fellow servant of the servant of the defendant and therefore could not recover against the common master. This contention was overruled by this Court, for the reason that the evidence conclusively showed that when Edwards was hauling merchandise for the defendant he was engaged directly in the business of Burmeister, his general master, and his acts were in furtherance of that master's business in furnishing trucks and drivers for hire. This decision was in accord with the great weight of authority in respect to the hiring of vehicles and drivers by livery-stable keepers or garage-men, in which, although the passenger, or one who hires, has the authority to direct the driver when and where to drive, it has been practically universally held that the owner is liable for an accident occurring during the period for which the vehicle and driver are used by the passenger. The class of cases represented by *Bentley, Shriver & Co. v. Edwards* is totally different from the present case, and the principles therein laid down have no application, because in that case the truck belonged to and the driver was in the general employ of a master whose business it was to hire trucks and drivers to the general public, which while engaged in such service were directly furthering the general master's business; while here, according to the evidence of the plaintiff, we have the case of a man loaning, without recompense, a truck and driver to his father for purposes in no wise connected with the owner's business and purely for the benefit of the person to whom they have been loaned. It is uncontradicted that the business of the appellant was dealing in auto parts and buying, repairing and selling second-hand motor trucks, and

that it was no part of Murphy's general duties, as the servant of the appellant, to drive motor trucks; therefore, if the evidence of the plaintiff is believed, when the appellant loaned the truck and driver to his father, the servant was in the special service of another, engaged in that other's business and subject to his control and direction. Murphy thus temporarily became the servant of some one other than the appellant and was such other's servant at the time of the accident. This being true, the defendant was not liable for injuries resulting from such accident. In *Berry on Automobiles* (4th Ed.), page 1108, section 1225, it is said: "The rule is well settled that a servant in the general employment of one person may also become the special servant of another, with all the mutual rights and obligations of master and servant between them for the time of, and in relation to, the special service in which the servant is temporarily engaged. If an employer loans a servant to another for some special service, the latter with respect to that service may become liable as a master for the acts of the servant without any actual contract of employment between them or payment for service. This principle of law is so familiar that it scarcely needs the citation of authority to support it." And at page 1125 of the same work, section 1244, the author says: "The liability of one person for the negligence of another depends upon the contractual relation between the two of master and servant. In the absence of such relation no one can be held responsible for the conduct of another. Consequently the owner of an automobile is not liable for an injury to a third person due to the negligent operation of his automobile by one to whom he has loaned the machine. * * * The same rule applies * * * where he lends both his car and chauffeur to another." It will, therefore, be seen from what we have said that the presumption of the driver acting within the scope of his employment in this case is fully rebutted, whether we consider the defendant's testimony or the evidence offered on behalf of the plaintiff, and

the same is true when we consider all of the evidence of both parties, plaintiff and defendant, in combination. There is no evidence in this case which would entitle the plaintiff to recover, except the presumption arising from ownership and general employment of the driver, and we have no hesitancy in saying that this presumption is fully and conclusively met and destroyed by the evidence produced in behalf of both the plaintiff and the defendant. The case should have been withdrawn from the jury, and there was error in the refusal of the lower court to grant the defendant's A and B prayers. For this error the judgment must be reversed, without a new trial.

> *Judgment reversed, without awarding a new trial, the appellees to pay the costs of the appeal.*