655 A.2d 1333

**Eddie MACKEY, Jr., et al.,**

**v.**

**Michael R. DORSEY, et al.**

**No. 969, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

March 31, 1995.

Desiree M. Lange (Barry M. Chasen on the brief), Greenbelt, for appellants.

John B. Kaiser (McCarthy, Bacon & Costello on the brief), Lanham, for appellees.

Argued before ALPERT, HARRELL and HOLLANDER, JJ.

ALPERT, Judge.

In September 1989, appellants, Eddie Mackey, Jr. and Mildred Mackey, filed suit against appellee, Michael R. Dorsey, in the Circuit Court for Prince George's County seeking damages sustained as a result of a motor vehicle accident that occurred on June 9, 1988. On May 22, 1990, Dorsey filed a motion for summary judgment, which was denied by the Honorable Arthur H. Monty Ahalt on July 2, 1990. On October, 28, 1993, Dorsey filed a renewed motion for summary judgment, which was granted by the Honorable Richard Sothoron on April 22, 1994. This appeal followed.

## Facts

Mr. Mackey is employed as a bus driver for the Washington Metropolitan Area Transit Authority in the District of Columbia. On the morning of June 9, 1988, he was stopped at a bus terminal at the intersection of Thirteenth Street and Pennsylvania Avenue in downtown D.C. While Mackey was waiting for passengers to board his bus, appellee, Michael R. Dorsey, parked his vehicle across the street in the median behind a police car. Dorsey exited his car in order to ask the officer for assistance with his passenger, Audrey Cooper. Dorsey had picked up Cooper when he found her wandering on the highway on his way to work. She had indicated to him that

she was lost and was looking for her mother.[1] According to Dorsey, when he exited his vehicle he took his car keys with him. The officer informed him that he should take Cooper directly to D.C. General Hospital. When Dorsey returned to his vehicle, it did not start. Dorsey alleges that he then exited the car again in order to look under the hood. The police officer assisted him as he checked some wiring and the car's battery. He then reentered the car, successfully started the engine, "and exited again only long enough to shut the hood of the car." "At that time," Cooper slid over to the driver's seat and locked the door. Despite efforts by Dorsey and the police officer to stop her, Cooper pulled away from the median and collided with the bus driven by Mr. Mackey. Cooper was subsequently placed under arrest for unauthorized use of a motor vehicle.

Mr. Mackey's version of what transpired after Dorsey parked in the median is somewhat different. He contends Dorsey exited his vehicle on only one occasion, never left the car with his keys, and never unlatched the hood of the car to check underneath it.

The Mackeys brought suit against Dorsey under theories of negligent entrustment (Count II), vicarious liability (Count III), and gross negligence (Count VIII).[2] In granting Dorsey's motion for summary judgment as to all counts, the lower court stated:

> The Court feels there is no genuine dispute of material facts as to the fact that Ms. Cooper was not a permissive driver in this situation. The only time frame that Mr.

---

1. Appellants alleged in their complaint that Cooper was intoxicated and/or under the influence of drugs. There is no evidence in the record to this effect.

2. Although characterized in appellants' brief as a claim for primary negligence against Dorsey, Count VIII is in actuality phrased as a negligent entrustment claim in appellants' complaint. The implications of this are discussed later in this opinion.

 A claim for loss of consortium was also brought, on Mr. and Mrs. Mackey's behalf, against Dorsey. Cooper was sued under theories of primary negligence, loss of consortium, and gross negligence.

Dorsey could be presumed to be negligent in any way[,] shape or form by allowing his vehicle to be not under the care of himself, possibly accessible to Miss Cooper is when he exited the vehicle after the police officer and himself were able to start the same to simply close the hood.

Based on the affidavits, that appears to be unrefuted.... It is my sense based on the facts before me, that even if this matter went to trial as far as Mr. Dorsey, that a trial judge would direct Mr. Dorsey out at the end of the plaintiff's case.

The Mackeys assert that the lower court erred in finding that there were not issues of material fact with respect to each count of their complaint. Specifically, they contend that there are disputed issues of fact as to whether Cooper was the agent of Dorsey, and whether Dorsey relinquished control of his vehicle to Cooper when he left keys in the ignition and exited the vehicle.

Historically, it was only with great reluctance that summary judgment was granted. State and federal courts often "carelessly proclaimed that summary judgment was to be denied if there was *any* factual dispute or even any inference adverse to the movant which could be drawn from the facts." *Seaboard Surety Co. v. Richard F. Kline, Inc.*, 91 Md.App. 236, 242, 603 A.2d 1357 (1992). In a now famous trilogy of cases, *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *Anderson v. Liberty Lobby, Ltd.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and *Matsushita Elec. Ins. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the Supreme Court articulated the modern standard for summary judgment, which has been cited with approval by this court in *Seaboard*, 91 Md.App. at 242–45, 603 A.2d 1357. In *Seaboard*, at 243–44, 603 A.2d 1357, we summarized these three decisions:

The [Supreme] Court expressly stated that summary judgment was not a 'disfavored procedural shortcut.' Thus, the 'mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.' 'Factual disputes that are irrelevant or unnecessary will not be counted,' and when a movant has carried its burden, the party opposing summary judgment 'must do more than simply show there is some metaphysical doubt as to the material facts.' ... The mere existence of a scintilla of evidence in support of plaintiff's claim is insufficient to preclude the grant of summary judgment; rather there must be evidence from which the jury could reasonably find for the plaintiff.

(Emphasis in original; citations omitted.)

Thus, only a "genuine issue" as to a "material fact" will prevent the granting of an otherwise sufficient motion for summary judgment. A "material fact" has been defined as one that will "somehow affect the outcome of the case." *King v. Bankerd*, 303 Md. 98, 111, 492 A.2d 608 (1985). In contrast, a factual dispute "relating to grounds upon which the decision is not rested is not a dispute with respect to a *material* fact and such dispute will not prevent the entry of summary judgment." *Seaboard Surety Co.*, 91 Md.App. at 242–43, 603 A.2d 1357 (quoting *Salisbury Beauty Schools v. State Board of Cosmetologists*, 268 Md. 32, 40, 300 A.2d 367 (1973)).

Our task in the present case, then, is to determine if there were any such disputes of "material fact" that would prevent the trial court from finding that appellants were not entitled to judgment, as a matter of law, as to all three counts against Dorsey.

## I.

### Negligent Entrustment

The tort of negligent entrustment was first recognized by the Court of Appeals in *Rounds v. Phillips*, 166 Md. 151, 160–61, 170 A. 532 (1934). The Court adopted the theory of negligent entrustment as expressed in the Restatement (Second) of Torts, currently § 390, which provides:

One who supplies directly or through a third person a chattel for use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience or otherwise, to use it in a manner involving unreasonable risk of physical harm to others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

We recently clarified the elements of negligent entrustment in *Wright v. Neale,* 79 Md.App. 20, 28, 555 A.2d 518, *cert. denied,* 316 Md. 508, 560 A.2d 41 (1989), as:

(1) The making available to another a chattel which the supplier

(2) knows or should have known the user is likely to use in a manner involving risk of physical harm to others

(3) the supplier should expect to be endangered by its use.

 The principal feature of this tort is the knowledge of the supplier concerning the likelihood of the person to whom he entrusts the chattel to use it in a dangerous manner. *Herbert v. Whittle,* 69 Md.App. 273, 279–80, 517 A.2d 358 (1986); *Kahlenberg v. Goldstein,* 290 Md. 477, 488, 431 A.2d 76 (1981); *Morrell v. Williams,* 279 Md. 497, 503–04, 366 A.2d 1040 (1976). Appellants alleged in their complaint that Dorsey entrusted his vehicle to Cooper knowing that she was intoxicated and/or under the influence of alcohol or drugs. Given her condition, it was highly foreseeable, according to appellants, that placing a dangerous instrumentality in Cooper's custody would result in physical harm to others.

 Whether Dorsey knew of Cooper's propensity to use his car in a dangerous manner or not, we hold that Dorsey did not, as a matter of law, "entrust" his vehicle to Cooper. Under the first element outlined above, Dorsey must be held to have entrusted or "made available" his vehicle to Cooper. The appellate courts in Maryland have never directly addressed the issue of what constitutes "making available." The Court of Appeals has stated generally that a "supplier" for purposes of negligent entrustment may be "anyone who has the right to permit and the power to prohibit the use of the

chattel." *Kahlenberg,* 290 Md. at 489, 431 A.2d 76; *see also, Rounds,* 166 Md. at 168, 170 A. 532. It is not necessary that the person "furnish the chattel to the entrustee in a direct transfer in order to be found liable." *Morris v. Weddington,* 74 Md.App. 650, 657, 539 A.2d 1145 (1988). On the one hand, it could be argued that Dorsey had the "power to prohibit" Cooper from using his vehicle. Dorsey had the keys to the car in his possession and could have simply taken them with him when he exited the vehicle. We do not believe, however, that the Court intended for this language to include a person whose chattel is stolen. All car owners arguably have the "power to prohibit" others from taking stealing their vehicle. Whether Dorsey failed to exercise this power and whether he was at fault for leaving his vehicle without his keys are issues that would potentially be germane to a negligence claim, rather than a claim for negligent entrustment.

■ We find it axiomatic that when a vehicle is stolen, as it was here, the owner cannot be said to have supplied, entrusted, or "made available" his or her vehicle. The "making available" of the chattel requires that the supplier do so knowingly or with the intent to supply the chattel to that person.[3] In the case at bar, appellants do not dispute the fact that Cooper took Dorsey's vehicle without his permission. In the affidavit attached to his motion for summary judgment, Dorsey stated: "I did not know this woman personally and allowed her to enter my vehicle only for the purpose of transporting her to a safe location. In no way did I give this woman permission to drive my car, nor was she my agent." There was no evidence contradicting this statement. Indeed, we note that after the accident Ms. Cooper was placed under arrest for unauthorized use of a vehicle. We hold, therefore, that the lower court properly concluded, as a matter of law,

---

**3.** This is distinguishable from the requirement that the supplier know or have reason to know, once the chattel is entrusted, that the entrustee would use the chattel in an dangerous manner.

that Dorsey was not liable for negligent entrustment.[4]

## Respondeat Superior

Appellants' second cause of action against Dorsey is based upon a theory of respondeat superior or vicarious liability. In their complaint, appellants alleged that Cooper was acting as Dorsey's agent when the accident occurred because she was "operating the vehicle with the permission and consent of the defendant Dorsey and within the scope of that permission."

■ Appellants correctly point out that under Maryland law there is a presumption that "the negligent operator of a vehicle is the agent, servant, or employee of the owner acting within the scope of his employment." *Williams v. Wheeler,* 252 Md. 75, 82, 249 A.2d 104 (1969). This presumption is a rebuttable one, however, and where the evidence is uncontradicted that the operator is not the agent, servant, or employee of the owner, the court may properly decide liability as a matter of law. *Id.* at 82–83, 249 A.2d 104; *Slutter v. Homer,* 244 Md. 131, 139–40, 223 A.2d 141 (1966); *Miller v. Shegogue,* 221 Md. 292, 294, 157 A.2d 272 (1960); *Salowitch v. Kres,* 147 Md. 23, 29, 127 A. 643 (1925).

■ In the present case, aside from bald allegations in appellants' complaint, there is no evidence whatsoever that Cooper was acting under any type of authority when she took Dorsey's car and drove it into Mr. Mackey's bus. There is

---

4. This case is easily distinguishable from those cases in which the tort of negligent entrustment has historically been applied. For instance, in *Wright,* 79 Md.App. at 28, 555 A.2d 518, we held that the defendant was a "supplier" of the vehicle in which her husband had an accident because she had participated in making her husband joint owner of the car, which he was unable to do in his name alone due to lack of insurance. In *Morris,* 74 Md.App. at 658–59, 539 A.2d 1145, we held that the defendant's parents-in-law who had loaned the vehicle to him on numerous occasions in the past, including the day before the accident, were suppliers even though the defendant was not given express permission to use the vehicle on the day of the accident. In *Kahlenberg v. Goldstein,* 290 Md. at 491, 431 A.2d 76, the defendant was found to have supplied a vehicle to his son despite the fact that the car was a gift.

certainly no evidence that Dorsey gave Cooper express authorization to drive the car. There is also no factual support for appellants' contention that Dorsey "gave implicit permission to Cooper to operate his vehicle." Any inference to this effect was directly rebutted by the uncontradicted evidence in Dorsey's affidavit that he "did not know [Cooper] personally and allowed her to enter [his] vehicle only for the purpose of transporting her to a safe location." Dorsey had never met Cooper before, and had never allowed her to use his car in the past.[5] We find particularly telling appellants' response to the following interrogatory:

7. If it is your contention that the Defendant, Audrey Cooper, was acting as the agent of the Defendant, Michael R. Dorsey, at the time of the occurrence, or was acting within the scope of her employment and in furtherance of the interest if this Defendant, Michael Dorsey, please give a concise statement of facts upon which you rely to support your contention.

ANSWER: I contend that Mr. Dorsey was negligent in leaving Ms. Cooper alone in his vehicle with the keys to that vehicle still in its ignition, while Ms. Cooper was in an intoxicated state.

This contention amounts to a claim of negligence and provides no support for appellants' assertion that Cooper was an agent, servant, or employee of Dorsey.

The presumption that the driver of an automobile is the agent of the owner has been rebutted in cases where the relationship between the driver and owner is far less attenuated than it is in the case at bar. In *Wheeler*, the defendant and his stepson, Brady, had been drinking at a bar for most of the afternoon. *Id.*, 252 Md. at 78, 249 A.2d 104. The defendant left the bar without Brady and fell asleep in the back seat of his car. *Id.* When Brady later left the bar, he was unable to wake the defendant. Brady took the car keys that the defen-

---

5. Also, we note again that Cooper was arrested for her actions and charged with unauthorized use of a motor vehicle.

dant had left under the sun visor and was in the process of driving the vehicle home when the accident occurred. *Id.* We held that it was error for the trial judge to refuse to grant the defendant's motion for a directed verdict as there was no evidence from which a jury could have found that the defendant expressly or tacitly authorized Brady to drive the car. *Id.* at 83, 249 A.2d 104. It was undisputed that the defendant was sleeping in the back seat of the car when Brady took the keys and drove away. *Id.* at 82, 249 A.2d 104. Moreover, the defendant had never given Brady permission to drive the car in the past. *Id.* We stated:

[A]s the defendants' testimony was uncontradicted, the presumption was rebutted, and that in the absence of any other evidence, the question was one for the court to decide as a matter of law. As there was no evidence on which a finding of agency could be based, the jury cannot be allowed to speculate.

*Id.* at 83, 249 A.2d 104.

In *Miller v. Shegogue,* 221 Md. 292, 157 A.2d 272 (1960), the defendant left his car with an auto repair shop and gave the mechanic permission to "drive it to test it." *Id.* at 293, 157 A.2d 272. Approximately three weeks later, an employee of the shop took the car to drive another employee home. After stopping for a beer and sandwich, the employee became involved in a car accident. The trial court granted the defendant's motion for directed verdict on the ground that there was no evidence that the driver was the agent, servant, or employee of the defendant. *Id.* The Court of Appeals affirmed and agreed with the trial court that "the evidence adduced clearly destroyed the presumption of agency as a matter of law." *Id.* at 294, 157 A.2d 272. *See also, Salowitch v. Kres,* 147 Md. 23, 33–34, 127 A. 643 (1925) (holding presumption rebutted where employee, whose job was not to drive truck, drove it to pick up groceries for another employee).

## Imputed Negligence

Appellants also rely on the theory, not entirely different from their agency theory, that Cooper's negligence may be

imputed to Dorsey. In a leading case on imputed negligence, *Smith v. Branscome,* 251 Md. 582, 595, 248 A.2d 455 (1968), the Court of Appeals summarized this theory as follows:

> [U]nder Maryland tort law, an owner because of his presumed control over his car when present though not physically handling the wheel, may be held liable in the event of a collision, to the same extent as if he were manually controlling or operating the vehicle. In such a case the negligence of the driver is said to be imputed to the owner. However, an agency relationship is not necessary to be shown, for the failure of the owner, who is present, to exercise his presumed control makes him liable.

(quoting *Gray v. Citizens Casualty Co.,* 286 F.2d 625, 627 (4th Cir.1960)) (citations omitted).[6]

The driver's negligence is imputed to the owner on the basis that "the owner-passenger retains his right to control the movements of the vehicle." *Nationwide Mutual Ins. Co. v. Stroh,* 314 Md. 176, 181, 550 A.2d 373 (1988). In *Powers v. State,* 178 Md. 23, 28, 11 A.2d 909 (1940), the Court stated:

> It is well established that the owner of an automobile, who is riding in it while driven by another, is not relieved of responsibility because he is not personally at the wheel, when he tacitly assents to the manner in which it is driven.... If the car is negligently operated, it is presumed that the owner consented to the negligence.

---

**6.** In *Slutter v. Homer,* 244 Md. 131, 139, 223 A.2d 141 (1966), the Court of Appeals distinguished the theory of agency from that of imputed negligence:

> The doctrine of imputed negligence rests on the presumption that the non-driving owner had the right to control the vehicle. That presumption ... is rebuttable; the presumption is based, not on the actual exercise of control, but on the right to exercise it. The agency doctrine, on the other hand, rests on the relationship of the parties and the nature of the expedition during which the accident occurred. Imputed negligence, like agency, is based on the relationship, but turns on the facts in respect to the right of control, whereas the agency theory applies, where it is pertinent, irrespective of the momentary right of physical control. In short, the agency doctrine is predicated on a status rather on inference of fact.

 The above comments recognize that the theory of imputed negligence applies only where the owner is physically present in the automobile when the driver's negligence occurs. While the appellate courts have never definitively held that the owner's presence is required, the Court of Appeals has stated that "[o]rdinarily the negligence of an operator of a motor vehicle may not be imputed to the owner who is not present in the vehicle." *Atlantic Mutual Ins. Co. v. Kenney*, 323 Md. 116, 134, 591 A.2d 507 (1991). Unless there are other facts that support the existence of a right to control on the part of the owner, no such presumption arises if the owner is absent from the vehicle when the negligence occurs. In the case at bar, Dorsey was not present in the car when Cooper pulled away from the median and collided with Mr. Mackey's bus. There are simply no facts in the record that support appellants' contention that Dorsey had the "right to control" the vehicle. We hold, therefore, that the lower court properly granted Dorsey's motion for summary judgment with respect to Count III of appellants' complaint. Even assuming that Dorsey's absence from the vehicle does not completely preclude the presumption from arising, we believe that the presumption was sufficiently rebutted by the uncontradicted evidence that Cooper took Dorsey's vehicle without his permission. In *Williams*, the Court stated that the presumption may be rebutted by a showing "that the owner-passenger relinquished his right to control or was unable to exercise that right." 252 Md. at 85. Based on the undisputed facts in the record, Dorsey was unable to exercise his right to control his vehicle.

In sum, we agree with the lower court that there were no genuine issues of "material" fact that would preclude it from granting summary judgment as to Counts II and III of appellants' complaint. In an affidavit attached to appellants' opposition to motion for summary judgment, Mr. Mackey disputed Dorsey's claim that he exited his vehicle on two occasions, the second time to close the hood of the car. Mr. Mackey averred that Dorsey exited his vehicle only once, and had never unlatched the hood of his vehicle. While these are

clearly disputes of fact between the parties, the resolution of these disputes will not affect the outcome of the case or our determination of the purely legal question at issue here. Whether Dorsey exited his vehicle once or twice, or whether he was having car problems which necessitated looking under the hood of his car, are not issues of "material" fact under any of appellants' theories—negligent entrustment, respondeat superior, or imputed negligence.

## II.

### Gross Negligence

In Count VIII of the complaint, appellants alleged that:
[D]efendant Dorsey's *entrustment* of his motor vehicle in this matter was of an extraordinary nature characterized by a wanton and reckless disregard for Mr. Mackle's [sic] safety and constitutes gross negligence justifying an award of punitive damages against Dorsey.
(Emphasis added.)

■ This count is *not* a gross negligence count, as the parties apparently assume, but is essentially a claim for negligent entrustment.[7] Neither party appears to have recognized this fact. Appellants contend in their brief that Dorsey was negligent in leaving the keys in his car and failing to maintain control of the vehicle. They argue that summary judgment was not appropriate because "there exist two disputed issues of fact: 1) was there some emergency necessitating leaving the keys in the ignition?; and 2) did Defendant Dorsey

---

7. The only other allegations in appellants' complaint that are based in negligence, likewise, amount to no more than a claim for negligent entrustment, rather than primary negligence. Paragraphs 14 and 15 of the complaint state:
 14. As an owner of a motor vehicle, defendant Dorsey had a duty to refrain from placing a dangerous instrumentality in the custody of an individual who he knew or should have known would not handle the dangerous instrumentality properly.
 15. Defendant Dorsey breached these duties when he entrusted the vehicle he owned to defendant Cooper who he knew, or reasonably should have known, would not handle the vehicle properly.

exercise due care in maintaining control of his vehicle?" While these issues would potentially be relevant to a gross negligence claim, our review of the complaint reveals that no such claim was pled by appellants.

### Negligence

Even assuming that appellants have pled a cause of action for negligence on the part of Dorsey as the actor, we hold that the trial court properly granted Dorsey's motion for judgment.

Section 21–1101 of the Transportation Article provides:

(a) *Duty of driver upon leaving unattended vehicle.*—Except as provided in subsection (c) of this section, a person driving or otherwise in charge of a motor vehicle may not leave it unattended until the engine is stopped, the ignition locked, the key removed, and the brake effectively set.

Md.Code Ann., Transp. § 21–1101(a) (1992 Repl.Vol.).

The purpose of this statute is "to insure the safety of the public" by "prevent[ing] some unauthorized person from starting a car or to prevent the start of a car by gravity." *Hochschild, Kohn & Co., Inc. v. Canoles*, 193 Md. 276, 283–84, 66 A.2d 780 (1949). "The duty to the public created by the statute was primarily to protect against a theft of or tampering with a motor vehicle and to prevent them from moving under their own momentum should the brakes fail." *Liberto v. Holfeldt*, 221 Md. 62, 66, 155 A.2d 698 (1959).

The violation of section 21–1101 may be evidence of negligence, though it "is not per se enough to make a violator thereof liable for damages." *Liberto*, 221 Md. at 65, 155 A.2d 698. In the present case, it is undisputed that Dorsey exited his vehicle while it was still running and with the keys still in the ignition. In determining whether Dorsey's actions violated section 21–1101, a threshold question we must address is whether Dorsey could be said to have left his vehicle "unattended" as the statute requires. Though the statute does not define "unattended," the Court of Appeals has held that "a reasonable interpretation is that it means that without any one present who is competent to prevent any of the probable

dangers to the public." *Lustbader v. Traders Delivery Co.,* 193 Md. 433, 439, 67 A.2d 237 (1949). *See also, Hochschild, Kohn & Co.,* 193 Md. at 284, 66 A.2d 780. A person does not leave a vehicle unattended "when he leaves with it a person who may be ordinarily capable of coping with the kind of emergencies that may be expected to arise under the particular circumstances of the case." *Lustbader,* 193 Md. at 439–40, 67 A.2d 237.

In *Lustbader,* the Court of Appeals held that a vehicle was not unattended within the meaning of the statute when the driver of a delivery truck left the vehicle with his seventeen year old helper while he went into a nearby liquor store. *Id.* at 438–40, 67 A.2d 237. The Court found that the boy's presence in the truck satisfied the statute despite the fact that he did not have a license and did not know how to drive. *Id.* at 439, 67 A.2d 237. The Court noted:

> We are not concerned here with the occupancy of a car by a bulldog or a baby, either of which might present obvious questions. Here we have a human being of 17, with apparently sufficient intelligence, who would be presumably capable of preventing any ordinary interference by unauthorized persons.

*Id.*

Similarly, in *Collins v. Luper,* 12 Md.App. 109, 114, 277 A.2d 445 (1971), this Court held that a car was not left "unattended" by the driver even though the car's remaining occupants were underage and apparently intoxicated.

Thus, there is no requirement in section 21–1101 that when a driver leaves his or her vehicle with the keys in the ignition, the occupant who remains in the vehicle must be competent to drive a motor vehicle. In order for the vehicle to be "unattended," the person need only be incapable of preventing a thief or other unauthorized person from taking the car. *Id.* The facts of the present case, however, are unique. Here, Ms. Cooper was not only the lone occupant of the car when Dorsey exited it, she also became the "unauthorized person" or thief against whom the statute was designed

to protect. Despite our holding in *Collins,* appellants make much of the fact that Cooper was allegedly intoxicated or under the influence of drugs. Even assuming that this was relevant to determining whether Cooper was capable of preventing a third party from taking the car, there is nothing in the record before us to support appellants' allegations. She very well could have been capable of preventing a third party from stealing the car.

As stated on our behalf by Judge Diana G. Motz (formerly of this Court and now a member of the United States Court of Appeals for the Fourth Circuit):

> When a moving party has set forth sufficient grounds for summary judgment, the party opposing the motion must show with 'some precision' that there is a genuine dispute as to material fact. Formal denials or general allegations are insufficient to prevent the award of summary judgment.

*Seaboard Surety Co. v. Richard F. Kline, Inc.,* 91 Md.App. 236, 243, 603 A.2d 1357 (1992) (citations omitted). What we have here are merely general allegations unsupported by either an affidavit or other written statement under oath, as required by Rule 2–501(b). Apparently as an appendage to their "Opposition to Motion for Summary Judgment," the appellants filed a "Statement of Material Facts Generally Disputed." It included the following question: "Was defendant, Michael Dorsey . . . negligent in leaving the keys of his vehicle accessible to Audrey Cooper, a person who he knew or should have known would not handle the vehicle properly?" In a memorandum in support of that Opposition to Motion for Summary Judgment, appellants alleged,

> Mr. Dorsey had offered Ms. Cooper a ride after discovering that she was disoriented and lost. Mr. Dorsey was or should have been aware that defendant Cooper was either intoxicated and/or under the influence of controlled dangerous substances and was a danger to herself when he left his vehicle.

In his affidavit in support of plaintiff's Opposition to defendant's Motion for Summary Judgment, Mr. Mackey said not

one word about Ms. Cooper being disoriented, intoxicated, or under the influence of drugs. Because three years and additional discovery had taken place, defendants filed a renewed motion for summary judgment, along with an affidavit of Michael R. Dorsey in support thereof. In that affidavit Mr. Dorsey stated, among other things:

> On my way in, I observed a young woman (now known to be Audrey Cooper) wandering the highway. The woman indicated to me that she was lost and could not find her mother.
>
> \* \* \* \* \* \*
>
> I offered the woman a ride for the sole purpose of transporting her to a location of safety, preferably a police station. I thought she would be in danger if she continued to wander the highway.

The affidavit, in itself, does not indicate that Ms. Cooper was disoriented, intoxicated, or under the influence of drugs. Indeed, it appears that she had the cognitive ability to indicate that she was lost and looking for her mother. We should not infer from that alone that she was incapable of preventing a thief or unauthorized persons from taking the car.

In a memorandum filed in opposition to the renewed motion for summary judgment, appellants allege: "Defendant Ms. Cooper was a passenger in Mr. Dorsey's vehicle at the time. Mr. Dorsey knew that Ms. Cooper was extremely disoriented and knew or should have known of her intoxicated state." Once again, the allegation was not supported by an affidavit or other written statement under oath. *See* Rule 2–501(b). As Judge Motz observed in *Seaboard Surety,* 91 Md.App. at 243, 603 A.2d 1357, "[i]n order to defeat a motion for summary judgment, the opposing party must proffer material facts which would be admissible in evidence." Appellants failed to do so. We hold, therefore, that Dorsey's vehicle was not "unattended" within the meaning of the statute.

Even assuming, *arguendo,* that Dorsey did violate section 21–1101 when he left his keys in the ignition and that, therefore, the vehicle was "unattended," this violation does not *per se* make him liable for appellants' damages. In order to

recover in negligence, it is incumbent upon appellants to establish not only a duty owed by Dorsey and a breach thereof, but also that the breach was the proximate cause of their damages and was not "interrupted by a break in the chain of causation." *Liberto,* 221 Md. at 65, 155 A.2d 698.

In *Collins,* 12 Md.App. at 114–15, 277 A.2d 445, Chief Judge Murphy, who was then sitting on this Court, aptly described "proximate cause" as follows:

> Under the doctrine of proximate cause, negligence is not actionable unless it, without the intervention of any independent factor, causes the harm complained of; it involves the idea of continuity, that the negligent act continuously extends through every event, fact, act, and occurrence related to the tortious conduct of the defendant and is itself the logical and natural cause of the plaintiff's injury.

When more than one act of negligence is arguably responsible for an injury, the question presented is whether the second negligent act constitutes a sufficient break in the chain of causation so that it supercedes the first, thereby terminating its role in the chain of causation. *Hartford Ins. Co. v. Manor Inn of Bethesda, Inc.,* 335 Md. 135, 157, 642 A.2d 219 (1994).

> Thus, although an injury might not have occurred 'but for' an antecedent act of the defendant, liability may not be imposed if for example the negligence of one person is merely passive and potential, while the negligence of another is the moving and effective cause of the injury . . . or if the injury is so remote in time and space from defendant's original negligence and another's negligence intervenes.

*Peterson v. Underwood,* 258 Md. 9, 16, 264 A.2d 851 (1970) (citations omitted).

Both this Court and the Court of Appeals have addressed issues of causation in contexts similar to the case *sub judice.* In *Collins,* the plaintiff was a passenger in a car driven by the defendant, who had pulled over so that he and two other passengers could urinate in some nearby bushes. *Id.,* 12 Md.App. at 110, 277 A.2d 445. When the defendant exited his

vehicle, he left his keys in the car. Soon thereafter, the defendant's father drove by and stopped to talk with his son. As the two were conversing outside the car, Roche, who was sitting next to plaintiff in the front seat, slid under the wheel and drove away at a high rate of speed, striking a nearby utility pole. *Id.* at 111, 277 A.2d 445. The plaintiff sued the defendant claiming that he owed "a duty not to leave the vehicle unattended, without stopping the engine, locking the ignition, and removing the key, or without leaving the vehicle in charge of a competent person and in such a condition as to make it possible for others to readily operate it." *Id.* The trial court denied the defendant's motion for directed verdict and we reversed. *Id.* at 115, 277 A.2d 445. We held that it was not reasonably foreseeable to the defendant that Roche would slide under the wheel and suddenly drive off. *Id.* at 114, 277 A.2d 445. Further, we stated that the "sole proximate cause of [the plaintiff's] injuries was the independent, unexpected, extraordinary negligent act of Roche in suddenly driving off in the [defendant's] vehicle and striking a utility pole." *Id.* at 115, 277 A.2d 445. We concluded that the court erred in permitting the case to go to the jury as there was no legally sufficient evidence of any negligence on the defendant's part.

In *Liberto*, the defendant neglected to remove her key from the ignition of her car when she went into an animal hospital to pick up her dog. 221 Md. at 64, 155 A.2d 698. When she returned "not a minute later," the car was gone. Five days later, Robert Johnson, who had stolen the vehicle, was involved in an accident with the plaintiff. *Id.* The defendant's motion for directed verdict was granted by the trial court and the Court of Appeals affirmed. *Id.* at 67, 155 A.2d 698. The Court held that the negligence of the defendant in leaving her keys in the ignition, although a violation of the unattended motor vehicle statute, was not, as a matter of law, the proximate cause of the plaintiff's injuries. *Id.* Rather, the negligence of the thief, the Court stated, was "an independent

intervening cause which was in fact the proximate cause of the accident." *Id.*[8]

Most recently, in *The Hartford Ins. Co. v. Manor Inn of Bethesda,* the Court of Appeals was again confronted with a situation similar to the case at bar. In that case, a mentally ill patient escaped from a state hospital in Carroll County. 335 Md. at 139, 642 A.2d 219. A few days later, the patient stole a laundry van from the parking lot of the defendant, Manor Inn of Bethesda. An employee of the Inn had left the van unlocked and the keys in the ignition when it was stolen. *Id.* The patient was later involved in a motor vehicle accident with the plaintiff, who sued both the Manor Inn and the State. *Id.* The Court of Appeals affirmed, noting at first that it was reasonably foreseeable that a thief would steal the van when the keys to it were left in the ignition, and that but for the negligence of the Manor Inn's employee, the patient would not have stolen the van. *Id.* at 160, 642 A.2d 219. The Court held, however, that it did not follow that this causal relationship "continued from the moment of the theft to the moment of the impact between the van and [the plaintiff's] car." *Id.* The negligent manner in which the patient drove the van, and its consequences, were "highly extraordinary." *Id.*

■ We find each of these decisions persuasive. When Dorsey exited his vehicle and left the keys still in the ignition, he significantly increased the chances of an unauthorized person, including a passenger in his own vehicle, taking the car without his permission. While there was no evidence that Ms. Cooper was intoxicated, under the influence of drugs, or otherwise incompetent to drive, apparently she may have been disoriented. While we do not believe that, under the unique circumstances of the present case, it was foreseeable that Ms. Cooper would attempt to slide under the wheel and drive the car away, even if we were to assume otherwise, the negligent

---

8. The Court also noted that the plaintiff's injuries were "too remote both as to time ['five days later'] and space ['a considerable distance across the city'] from the negligent act of the defendant in not removing the ignition key switch." *Id.* 221 Md. at 66, 155 A.2d 698.

manner in which she drove the car clearly was not foreseeable. Her negligence was an independent intervening event that broke the chain of causation initiated by Dorsey. Dorsey's act of leaving his keys in the ignition, although potentially a violation of the unattended motor vehicle statute and perhaps negligent itself, was not, as a matter of law, the proximate cause of appellants' injuries. We hold that the lower court properly granted Dorsey's motion for judgment.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.